UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LUV N' CARE LTD. and<br>ADMAR INTERNATIONAL, INC.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ROYAL KING INFANT PRODUCTS<br>CO, LTD. and DALBIR SINGH KHURANA,<br><br>　　　　Defendants. | Civil Action No. 2:10-cv-00461-DF<br><br><br>The Honorable Judge David Folsom |

**<u>DALBIR S. KHURANA'S REPLY IN SUPPORT OF HIS</u>**
**<u>MOTION TO DISMISS UNDER RULE 12(b)(2)</u>**

Defendant Dalbir S. Khurana ("Khurana") respectfully submits this reply in support of his motion to dismiss pursuant to Federal Rule 12(b)(2).  Although the opposition filed by plaintiffs (collectively "LNC") is long on *ad hominem* attacks, it is short on any factual basis from which the Court could find it has personal jurisdiction over Khurana.[1]  Khurana first notes that LNC complains that he filed "baseless motions to dismiss the Complaint."  Dkt. 30 at 3.  But then it admits that, due to those "baseless" motions, it filed an amended complaint.  *Id.*  The Amended Complaint ("AC"), however, still fails to plead a *prima facia* case for personal jurisdiction over Khurana.  The Court should dismiss the complaint.

## I. THE COURT DOES NOT HAVE GENERAL JURISDICTION

In his opening brief, Khurana explained that the Court does not have general jurisdiction over him.  Dkt. 26 at 3-4.  LNC does not attempt to rebut that argument; instead, it only argues that the Court has "specific jurisdiction" over Khurana.  *See, e.g.*, Dkt. 30 at 11, 13, 18, 22 (arguing why the Court allegedly has specific jurisdiction).  Indeed, although LNC repeatedly argues that the Court has specific jurisdiction, it never mentions general jurisdiction.  LNC's "failure to provide any legal or factual analysis [on the general jurisdiction] issue results in waiver of [that] issue."  *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995).  Thus, the Court should limit its analysis to whether it has specific jurisdiction over Khurana.

## II. THE ALLEGED FACTS THAT LNC RELIES ON ARE INSUFFICIENT TO GIVE THE COURT SPECIFIC JURISDICTION OVER KHURANA

LNC has alleged five facts in its AC that it claims are sufficient for the Court to find specific jurisdiction over Khurana.  In his opening brief, Khurana demonstrated how none of

---

[1] Khurana is specially appearing for the limited purpose of contesting the Court's jurisdiction over him.

1

those alleged facts support jurisdiction.  In its opposition, LNC only attempts to rebut Khurana's arguments for three of those alleged facts, implicitly conceding that the other two alleged facts are insufficient.  Khurana will address LNC's argument for the other three alleged "facts" in turn.

### A. The Court Does Not Have Specific Jurisdiction Over Khurana Based on His Alleged Misrepresentations.

LNC's main argument is that the Court has specific jurisdiction over Khurana because he made false representations to LNC to induce it to settle previous litigation.  *See* Dkt. 30 at 4.  But Khurana explained that the AC is completely lacking ***any facts*** demonstrating that Khurana made any false representations.  LNC contends, however, that it pled facts in paragraphs 19 and 30-32 of its AC that demonstrate that Khurana made false representations. Dkt. 30 at 35.  First, Paragraph 19 ***only describes U.S. Patent D617,465 and states that it is attached to the AC***.  *See* Dkt. 20, ¶19.  Thus, paragraph 19 has ***nothing*** to do with alleged false representations.

Second, paragraphs 30-32 were not in the original complaint.  LNC apparently added them to the AC to rebut Khurana's argument in his original motion that LNC had provided no factual basis to support its allegations that he had made false representations.  But these new paragraphs provide no factual basis that support LNC's allegations.  They state in their entirety:

> 30.     Since execution of the Settlement Agreement, Plaintiffs have become aware of significant sales by Defendants throughout the world both prior to and since execution of the Settlement Agreement which are inconsistent with Defendants' representations and in violation of the parties' Settlement Agreement, respectively.
>
> 31.     Based upon information gleaned since the settlement of the prior litigation, including, for example, discovery in litigations against Royal King's distributors and retailers, it can be inferred that Royal King's sales of even a subset of the accused products from the prior litigation to U.S. parties alone and prior to the 2009 Agreement substantially exceeded the representation made by Defendants RK and Khurana.
>
> 32.     Upon this and additional information and belief, Defendants' representations made during the negotiations as to RK's worldwide revenues from the accused products were knowingly or recklessly false when made.

2

These paragraphs do not contain a *single fact* supporting LNC's allegation that Khurana made false misrepresentations.  Instead, they put forth vague conclusions such as "Plaintiffs have become aware of significant sales by Defendants," *id.*¸ ¶30, and that based on "discovery in litigations against Royal King's distributors and retailers, it can be *inferred* that Royal King's sales" were higher than it stated, *id.*, ¶31 (emphasis added), and that based on "additional [unidentified] information," Royal King's sales were higher than disclosed.  *Id.*, ¶32.  Plaintiffs must make a *prima facia* case for personal jurisdiction based on *facts* not conclusions.  LNC made no attempt to identify 1) those other "significant sales," 2) the documents, the litigations, or the sales from which it allegedly "infers" that Royal King's sales were higher, or 3) the alleged "additional information" that it has that demonstrates Royal King's sales numbers were not accurate.  Thus, it has not provided a *single fact* to support its unfounded allegations.

Indeed, LNC's AC is internally inconsistent on this issue.  In paragraphs 31 and 32, it claims that it has "discovery [from other] litigations" and "additional information."  But in the very next paragraph, LNC admits that the "documents that would establish the falsehood of Defendants' representations . . . are peculiarly within the possession of Defendants."  *Id.* at ¶33.  Thus, LNC's AC demonstrates that it has *no evidence* to support its allegations that Khurana made any false representations, such that those representations could give the Court jurisdiction.

Nevertheless, LNC argues that exercising jurisdiction would be proper because "Khurana committed the fraud as both a representative of RK, and in his own capacity."  Dkt. 30 at 28.  But LNC has pled no facts that demonstrate Khurana committed any fraud.  Thus, that alleged fraud cannot be the basis for finding that the Court has personal jurisdiction because a "plaintiff's 'mere assertion' of a claim against a Defendant will not support the exercise of jurisdiction absent minimum contacts."  *Southern Bleacher Co. v. Husco*, Inc., 2001 U.S. Dist. LEXIS 5911,

3

\*15 (N.D. Tex. May 4, 2001).  The Court should follow *Southern Bleacher* and hold that as the defendant's "only alleged contact as an individual was the making of the alleged misrepresentation . . . this Court cannot assert personal jurisdiction over him."  *Id.* at \*17.

### B. The Court Does Not Have Specific Personal Jurisdiction Over Khurana Under the Stream of Commerce Theory

Khurana testified that he does not and has not put Royal King products into the stream of commerce.  Dkt. 26-1, ¶4.  LNC's response is attorney argument that basically "he does too."  Absent a single citation to the record, LNC's attorneys baldly state:  "Not only did Khurana oversee and direct placement of the accused products into the stream of commerce; Khurana knew that many of them would, and did, end up in Texas."  Dkt. 30 at 8.  But attorney argument is not fact.  Thus, there are no facts supporting LNC's assertion, and this attorney argument cannot be a basis for the Court to find that it has personal jurisdiction.

Additionally, every case cited by LNC where a court found jurisdiction based on placing products into the stream of commerce was over a corporation, not over an individual.  *See Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (personal jurisdiction is proper against **corporations** who placed products into the stream of commerce); *accord Ruston Gas Turbines, Inc., v. Donaldson Co., Inc.*, 9 F.3d 415, 417 (5th Cir. 1993); *Jackson v. GEHL Co.,* 2009 U.S. Dist. LEXIS 98276, \*1 (E.D. Tex. 2009); *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co.*, 2005 U.S. Dist. LEXIS 36211, \*2 (E.D. Tex. Dec. 5, 2005).

LNC also cites to *Brooks & Baker, L.L.C. v. Flambeau, Inc.*, 2011 U.S. Dist. LEXIS 112568 (E.D. Tex. Sept. 30 2011).  But in that case, while the Court found that it had jurisdiction over the corporation for placing its products into the stream of commerce, it found that ***it did not have jurisdiction over individuals under the stream of commerce theory***, including over the chairman (who was the former president) of the defendant.  *Id.* at

4

*3, *15 -*17.  The result in *Brooks* is not surprising because, if LNC were correct, the Court would have personal jurisdiction over ***every employee of every company that sends products to Texas***.  That ridiculous result is not the law.  Thus, the Court should follow *Brooks* and find that, even if Royal King placed products into the stream of commerce, that is an insufficient basis for the Court to find it has jurisdiction over Khurana.

### C. Specific Jurisdiction May Not Be Based on Khurana's Attendance at Texas Trade Shows Years Before the Alleged Torts Were Committed

LNC ignores the numerous cases cited by Khurana and argues that the Court has personal jurisdiction because of his "attendance at trade shows in the state." Dkt. 30 at 29.  But Khurana's attendance at trade shows in Texas is irrelevant to the Court's jurisdiction determination.  Khurana last attended a trade show in Texas in 2004 (a fact that LNC never challenges), Dkt. 26-1, ¶3, over *five years before the date of the signing of the settlement agreement.*  Dkt. 20-1.  But for specific jurisdiction, "the plaintiff's cause of action [must] arise[] out of or result from the defendant's forum-related contacts."  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  Here, it is impossible for LNC's claims related to breaching of that settlement agreement after 2009 to arise out of Khurana's attendance at trade shows in 2004.  Consequently, the fact that he attended trade shows early in this century cannot be a factor in the Court deciding whether it has jurisdiction over Khurana.

### D. The Court Does Not Have Specific Personal Jurisdiction Over Khurana Based on LNC's Alleged New Facts

Realizing that the three facts that it is relying on are insufficient to give the Court jurisdiction, LNC attempts to rely on two new "facts."  First, it argues that the fact that Royal King did not join this motion to dismiss for lack of personal jurisdiction is relevant.  Dkt. 30 at 9.  LNC is wrong.  Royal King did not join the new 12(b)(2) motion because it had previously

5

conceded personal jurisdiction over claims 1 and 2 and it has made the strategic decision to bring several counterclaims if the currently pending 12(b)(6) motion is not granted in full.[2] By bringing claims in this Court, it would be consenting to personal jurisdiction.[3]

LNC next argues that the defendants "***still have not denied that they have continued to sell worldwide the products accused in this litigation – in direct violation of the Settlement Agreement -- since the Agreement was executed.***" Dkt. 30 at 6 (emphasis in original). That is a bizarre argument for LNC to make because, later on that same page, it quotes ***verbatim the defendants' explicit denial*** that they have continued to sell the products at issue. *Id.* at 6-7.

Continuing the same argument, LNC claims that defendants have only denied that they sell two of the products-at-issue. Dkt. 30 at 6 n.3. LNC is confused. The defendants explained that two of the products listed in LNC's AC are ***not even Royal King products***. *See* Dkt. 26-1, ¶10. As far as the remaining products are concerned, Khurana has testified that the defendants have not sold any of those products in violation of the settlement agreement.[4] *Id.* at ¶11.

### III. THE JURISDICTION PROVISION DOES NOT GIVE THE COURT PERSONAL JURISDICTION OVER KHURANA

LNC argues that the settlement agreement's jurisdiction provision applies to Khurana

---

[2] LNC misleadingly states in passive voice that "jurisdiction has been conceded [on Count 1 and] . . .Count II." Dkt. 30 at 15. That concession was by Royal King, not Khurana. He has never conceded jurisdiction on Count II and Count 1 was not even asserted against him.

[3] LNC questions why Khurana's declaration no longer addresses jurisdictional facts that relate to Royal King. But then LNC answers its own question when it states "the present 12(b)(2) motion concerns Khurana only, whereas their first 12(b)(2) motion concerned both Defendants." Dkt. 30 at 6 n.4. The reference to Royal King in paragraph 11 was kept in because, if Royal King had not been included in that paragraph, LNC would undoubtedly have argued that not including Royal King was an admission that Royal King had been selling products. The reference to Royal King in paragraph 12 was kept in because the defendants cited that paragraph in their joint 12(b)(6) motion.

[4] LNC continues to make its bizarre "Khurana-has-not-denied-argument." It alleges that "Khurana has not denied that the products at issue here are sold in Texas. Nor has he denied that he has tortiously interfered with Plaintiffs' customers, such as HEB." Dkt. 30 at 23. Those statements are incorrect. Khurana testified Royal King has not sold any products in violation of the settlement agreement anywhere, let alone Texas, and that neither he nor Royal King are aware of the alleged business relationships, which is a requirement for tortious interference. Dkt. 26-1, ¶¶11-12.

because "the Agreement nevertheless governs his actions by specifically defining the party 'Royal King' to include its agents, officers, directors and employees, which includes . . . Khurana."  Dkt. 30 at 14 n.9.  Thus, according to LNC, not only does the Court have personal jurisdiction over Khurana, it also would have jurisdiction over all 1,500 of Royal King's employees in Thailand, and it would have personal jurisdiction over any agents of Royal King no matter where in the world they are located, merely because of the definition of "Royal King."  Unsurprisingly, LNC cannot point to a single case that supports its argument.  Defining Royal King to include the other parties bound Royal King to be legally responsible for the actions of those parties; it did not and could not bind anyone who was not a signatory to the agreement to agree to personal jurisdiction in Texas.

Indeed, even LNC does not believe its own argument.  If the jurisdiction provision of the contract covered Khurana, then so would the other provisions.  But LNC ***did not bring the breach of contract claim*** against Khurana because it knew that none of the provisions of the contract applied to him, as he was not a party to the contract.

Moreover, LNC's argument was explicitly rejected in *PLS-Pacific Laser Sys. v. TLZ Inc.*, 2007 U.S. Dist. LEXIS 53176 (N.D. Cal. July 9, 2007).  In *PLS*, the plaintiff argued that the court had jurisdiction due to the fact that the other party to the agreement was defined as "TLZ, Inc. and all of its present and former officers, directors, shareholders, agents, employees and attorneys, and their successors and assigns." *Id.* at *10-11.  Thus, it argued that the jurisdiction provision of the agreement applied to the president and other employees of the defendant. *Id.*  The Court disagreed, finding that a corporation could not bind its employees to agree to jurisdiction where the employees were not parties to the agreement.  *See id.* at *11-12.  Moreover, unlike Khurana, the president of the defendant signed the

7

agreement. *Id.* at *8. Still, the court found that the jurisdiction provision did not give it jurisdiction over the president. Thus, the Court should follow *PLS* and find that the jurisdiction provision is not a basis for the Court to find it has jurisdiction over Khurana.

### IV. LNC HAS FAILED TO MAKE A *PRIMA FACIA* CASE THAT THE COURT HAS JURISDICTION OVER KHURANA FOR EACH CLAIM

In his opening brief, Khurana explained that "the plaintiff must establish specific jurisdiction for each claim asserted against the defendant." *Xtera Communs., Inc. v. TPACK A/S*, 2010 U.S. Dist. LEXIS 110349, 5 (E.D. Tex. Sept. 1, 2010); *accord Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim"). LNC simply ignores this binding authority. Instead, it argues that the Court has personal jurisdiction over the patent infringement claim. It also argues that the Court has jurisdiction over the other claims under the doctrine of pendent personal jurisdiction. Finally, it argues that the Court has personal jurisdiction over Khurana for the torts he committed in Texas. Khurana will address each of these arguments in turn.

#### A. The Court Does Not Have Personal Jurisdiction Over Khurana for the Patent Infringement Claim

LNC contends: "Jurisdiction over Khurana for Count VII (patent infringement) is perfectly straightforward." Dkt. 30 at 27. It is certainly "straightforward" that the Court lacks personal jurisdiction over Khurana. Assuming, *arguendo*, that it would be proper to base jurisdiction over Khurana based on Royal King's sales, LNC has not come close to pleading sufficient facts to support a *prima facia* case for jurisdiction on this claim.

First, LNC fails to allege, let alone plead facts (as it must), that Khurana infringed any patent claim. Rather, LNC uses the passive voice to allege that "some of the infringing products

8

have been sold in Texas since the Agreement." *Id.*  What is missing from that statement is even an allegation that **Khurana** sold some of the infringing product in Texas.  Thus, personal jurisdiction over Khurana cannot be based on his allegedly infringing the patent claim.

Second, LNC has not alleged that ***anyone*** has infringed the patent.  LNC chooses its words very carefully.  It alleges "several of the products at issue infringe . . . the '439 patent." *Id.*  It then alleges that "[a]t least some of the infringing products have been sold in Texas since the Agreement."  *Id.*  But what LNC fails to even allege, let alone offer any fact to support its allegation (as it must), is that any infringing product was sold in Texas ***after the '439 patent issued***, which was nearly two years after the agreement was signed.  A defendant cannot be liable for infringement before the patent issued.  *Gustafson, Inc. v. Intersystems Industrial Products, Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).  As the '439 patent issued on March 14, 2011, Dkt. 20, ¶20, which is after the filing date of the original complaint, ***none*** of the alleged sales listed in the original complaint can be the basis for LNC's patent infringement claim.  And since LNC has failed to allege even a single sale of any product in the U.S., let alone an infringing product, after March 4, 2011, LNC has failed to 1) state a claim for patent infringement (discussed more fully in the reply for the defendants' 12(b)(6) motion), and 2) plead facts supporting a *prima facia* case for personal jurisdiction over Khurana due to that alleged infringement.

### B.  The Court Does Not Have Pendent Jurisdiction Over Khurana

Assuming *arguendo* the Court did have personal jurisdiction over Khurana on the patent infringement claim, it would not have pendant personal jurisdiction over the interference claims.  First, Khurana notes that LNC is only arguing that there is personal jurisdiction over the interference claims, not over the fraudulent inducement claim.  *See* Dkt. 30 at 28 ("personal jurisdiction over Khurana is proper with respect to Counts III – VI").

Regarding claims III through VI, LNC is wrong that the Court has pendent jurisdiction over those claims. While conceding that the Fifth Circuit has never adopted the federal common law rule of pendent personal jurisdiction, LNC relies almost entirely on a single district court case as support for its argument that the Court has pendent personal jurisdiction over Khurana. But *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765 (N.D. Tex. 2008) does not help LNC for at least two reasons. First, and most importantly, that district court case cannot overrule the binding Fifth Circuit precedent that holds that "specific personal jurisdiction is a claim-specific inquiry," and that "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *accord Seiferth*, 472 F.3d at 274.

Second, for the circuits that have adopted this doctrine (and the Fifth Circuit has not), those courts have held that assuming such jurisdiction is completely discretionary with the courts and that it should be used sparingly. Indeed, in the case that LNC cites, Dkt. 30 at 26, the Eighth Circuit held "that the district court abused its discretion" in exercising pendent personal jurisdiction under the facts of that case. *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002). Thus, the Court should decline to exercise pendent personal jurisdiction in this case.

### C. The Court Does Not Have Personal Jurisdiction Over Khurana Because He Committed No Torts in Texas

LNC argues that the Court has personal jurisdiction over Khurana because he allegedly committed "tortious interference, fraud in the inducement and patent infringement" in Texas by putting products into the stream of commerce and making false representations during the settlement negotiations. Dkt. 30 at 23. But LNC has failed to put forward any facts to support these baseless allegations and "'mere assertion' of a claim against a Defendant will not support the exercise of jurisdiction." *Southern Bleacher,* 2001 U.S. Dist. LEXIS 5911 at *15.

The case most on point is one cited by LNC, *Auto Wax Co., Inc. v. Marchese*, 2002 U.S. Dist. LEXIS 12758 (N.D. Tex. July 15, 2002).  In *Auto Wax*, the court found that it lacked personal jurisdiction over the defendant's CEO because, even though he was also a salesman for his company, there was no evidence that he sold the infringing products in Texas.  *Id.* at *4-*6. In addition, that court refused to find jurisdiction because the CEO participated in a previous lawsuit between the parties in Texas.  That court held that the previous lawsuit could not be a basis for finding jurisdiction because the CEO's previous contacts "were caused by [plaintiff's] unilateral activity of suing [defendant corporation] in Texas." *Id.* at *6 n.3.

Similarly, in *Graco Children's Products, Inc. v. Draco Corp., Inc.*, 1995 U.S. Dist. LEXIS 6608 (E.D. Pa. May 15, 1995), the court found that it lacked jurisdiction over the president because even though the president "had general responsibility for 'everything' within the company," the plaintiff  "failed to show that [the president] had direct, personal involvement with the specific activities giving rise to this lawsuit." *Id.* at *7-*8.  Thus, the Court should follow *Auto Wax* and *Graco* and find that it lacks personal jurisdiction over Khurana.

### V.      LNC HAS FAILED TO REBUT KHURANA'S ARGUMENT THAT THE EXERCISE OF PERSONAL JURISDICTION OVER HIM WOULD NOT BE REASONABLE

As Khurana explained in his opening brief, the factors that a Court must consider in the fairness analysis are: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  At most, LNC addresses three of these factors in its opposition.

The first factor that LNC attempts to address is the interests of the forum state. It argues that Texas has an interest in having torts that are committed within Texas, adjudicated in Texas. Dkt. 30 at 29-30. While that statement is true, it is irrelevant to this case. Texas has no interest in adjudicating this dispute, which is a dispute between a Thai resident and a Louisiana corporation about acts that did not occur in Texas, or, indeed, have anything to do with Texas. In any event, assuming *arguendo*, that LNC has stated a claim upon which relief can be granted, any alleged torts committed in Texas will be adjudicated here against Royal King. Thus, this factor does not weigh in LNC's favor.

Moreover, the case that LNC quotes demonstrates that this factor actually weighs against LNC. The Fifth Circuit has stated: "'It is not unfair or unjust to require the **manufacturer** of a good that is knowingly delivered to a specific state to respond to a lawsuit arising out of defects in the good in that state.'" *Ruston Gas Turbines, Inc.*, *v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993) (emphasis added). But while it is not unfair to find jurisdiction over the **manufacturer**, it would be very unfair to find jurisdiction over an employee, especially as that employee is not just out of state, but rather is out of the country thousands of miles away from the forum. *See Brooks*, 2011 U.S. Dist. LEXIS 112568, *3, *15-18.

The second factor that LNC half-heartedly addresses is the burden upon the nonresident defendant. Amazingly, it claims that requiring Khurana to travel thousands of miles from Thailand to Texas "carries little if any weight in view of advances in travel and communications technology." Dkt. 30 at 30 (citing to *Jacobs Chuck*, 2005 U.S. Dist. LEXIS 36211)). But *Jacobs Chuck* does not support that argument for two reasons. First, that case involved a corporation, not an individual. While requiring a corporation that does business in the United States to fly to the United States is not unreasonable, the same cannot be said for requiring an individual to

12

travel from Asia to Texas. Second, in that case, if the defendant were dismissed, the plaintiff would have had no opportunity to recover. *See id.* at \*26-\*27. Here, on the other hand, if LNC has properly stated a claim upon which relief can be granted, it may receive full recovery from Royal King. Thus, this factor weighs in favor dismissal.

LNC next speculates that Khurana will be called as a witness by Royal King "to testify on each and every claim." Dkt. 30 at 30. It then argues that under *Bollinger* and *X-Tra Light*, its speculation is a sufficient basis for the Court to find it reasonable to require Khurana to travel halfway around the world to defend himself. First, at this stage in the litigation (especially with Royal King's 12(b)(6) motion pending), Royal King has no idea who it will be calling as witnesses at trial. Thus, the Court should ignore LNC's blatant speculation. Second, this case is very different from *Bollinger* and *X-Tra Light*. In both of those cases, as LNC concedes, the personal defendant was the president of the company, not an advisor, as is Khurana. *See id.* Second, the defendants in those cases were both based in the United States. Obviously, travel from one state to another is not near as burdensome as traveling half way around the world to a country that speaks a different language. Accordingly, as LNC has failed to rebut Khurana's showing that requiring him to litigate in a foreign country on the other side of the world from his home would create an extreme hardship, the Court should dismiss the claims against Khurana for lack of personal jurisdiction.

By not addressing the third and fourth facts, LNC has implicitly conceded Khurana's arguments. As Khurana explained, should LNC prevail, it would get relief from Royal King. As LNC cannot rebut that argument, it does not even try. In addition, LNC cannot contest that a suit between just Royal King and LNC is the most efficient judicial resolution of this controversy, considering that **the controversy is between Royal King and LNC.** Thus, the third and fourth

13

factors weigh strongly in favor of the Court not exercising personal jurisdiction over Khurana.

Finally, LNC attempts to gloss over the fifth factor in a footnote. Dkt. 30 at n.22. It does not even attempt to rebut Khurana's argument that finding jurisdiction here based on alleged statements made during settlement negotiations would have a chilling effect on the willingness of parties to enter settlement negotiations. Instead, it raises the "straw man" that Khurana is arguing that "an individual who resides overseas may make bold-faced, material lies during settlement negotiations with a US-based litigant with total impunity." *Id.* That is not this case for two reasons. First, as discussed *supra*, there are no facts to support LNC's bald assertion that Khurana has made "bold-faced material lies." Thus, if LNC were correct, ***every time an individual settled a claim on behalf of his company***, that individual would be consenting to personal jurisdiction on the other side of the world merely based on a plaintiff's ***unsupported allegation*** that the individual made a false representation. Second, assuming *arguendo* that LNC could prove its claim, Royal King would be responsible for any damages resulting from Khurana's alleged statements and there would not be "total impunity."

Realizing the weakness of its argument, LNC then alleges that "Defendants imply elsewhere in their brief that Louisiana would be an appropriate forum to adjudicate the fraud claim against Khurana. (Dckt. 26, p. 6)." *Id.* That statement is flatly false and disingenuous. The statement LNC refers to is merely a factual statement that the alleged statements at issue went from Thailand to Louisiana, demonstrating how attenuated Texas' interests in this case are. At no time did Khurana ever imply, however, that personal jurisdiction would be proper over him in Louisiana. Thus, all the factors the Court should consider demonstrate that it would not be reasonable for the Court to exercise personal jurisdiction over Khurana. The Court should grant Khurana's motion and dismiss this case for lack of personal jurisdiction.

14

## CONCLUSION

For the foregoing reasons, along with the reasons stated by Khurana in his opening brief, the Court should find that it lacks personal jurisdiction over Khurana and grant his motion to dismiss for lack of personal jurisdiction.

Dated: February 16, 2012

Respectfully submitted,

 */s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, L.L.P.
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Robert C. Nissen, Esq. (*admitted pro hac vice*)
Nissen & Associates, LLP
5335 Wisconsin Ave. Suite 440
Washington, DC 20015
rnissen@nisseniplaw.com
202-730-1257

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

      I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 16, 2012.

                                                                             _/s/ Melissa R. Smith_____