UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC., <br><br>        Plaintiffs, <br><br> v. <br><br> ROYAL KING INFANT PRODUCTS CO, LTD. and DALBIR SINGH KHURANA, <br><br>        Defendants. | Civil Action No. 2:10-cv-00461-JRG-RSP <br><br><br> JURY DEMANDED |

## JOINT FINAL PRETRIAL ORDER

**A.**     **COUNSEL FOR THE PARTIES**

       **Attorneys for Plaintiffs Luv n' care, Ltd. and Admar International, Inc.**

       Lee A. Goldberg  -- Lead Attorney (member of the bar, E.D. Tex.)
       Morris E. Cohen (member of the bar, E.D. Tex.)
       Benjamin H. Graf (admitted *pro hac vice*)
       Limor Wigder (admitted *pro hac vice*)
       **GOLDBERG COHEN LLP**
       1350 Avenue of the Americas, 4th Fl.
       New York, New York 10019
       (646) 380-2087 (phone)
       (646) 514-2123 (fax)
       MCohen@GoldbergCohen.com
       LGoldberg@GoldbergCohen.com
       BGraf@GoldbergCohen.com
       LWigder@GoldbergCohen.com


       John M. Jackson
       Texas Bar No. 24002340
       jjackson@jw.com
       Matthew C. Acosta
       Texas Bar No. 24062577
       macosta@jw.com

**JACKSON WALKER L.L.P.**
901 Main Street, Suite 6000
Dallas, Texas  75202
Telephone:  (214) 953-6000
Facsimile: (214) 953-5822

**Attorneys for Defendants Royal King Infant Products Co., Ltd. and Dalbir Singh Khurana**

Robert C. Nissen (admitted *pro hac vice*)
**McKENNA LONG & ALDRIDGE LLP**
1900 K Street NW
Washington, DC 20006
Tel: 202-496-7716
Fax: 202-496-7756
rnissen@mckennalong.com

Jeffrey D. Wexler (admitted *pro hac vice*)
**McKENNA LONG & ALDRIDGE LLP**
300 S Grand Avenue, 14th Floor
Los Angeles, CA 90071
Tel: 213-892-4910
Fax: 213-452-8029
jwexler@mckennalong.com

Melissa Richards Smith
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
Tel: 903-934-8450
Fax: 903-934-9257
melissa@gillamsmithlaw.com

B.    **STATEMENT OF JURISDICTION**

This Court has federal question jurisdiction over Plaintiffs' claim for patent infringement[1]

pursuant to 28 U.S.C. §§ 1331 and 1338(a), and it has supplemental jurisdiction over the parties'

remaining claims pursuant to 28 U.S.C. § 1367(a).  This Court further has diversity jurisdiction

---

[1]  Plaintiffs' claim for patent infringement is stayed.

over the state law claims which are the subject matter of this action pursuant to 28 U.S.C. §1332, in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen or subject of a foreign state.

Venue is undisputed.  Defendant Dalbir Khurana disputes personal jurisdiction; the Court denied his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) as to Plaintiffs' claim for fraudulent inducement (while granting the motion as to Plaintiffs' other claims).


## C.    NATURE OF ACTION

Because Plaintiffs' claim for patent infringement has been stayed, the trial of this matter will involve the parties' state law claims against each other.

Plaintiffs seek damages for (1) breach of a Settlement Agreement, (2) fraud in the inducement of that Agreement, and (3) interference with existing and prospective contractual and business relations.[2]  In particular, Plaintiffs allege that Defendants fraudulently induced Plaintiffs to enter the June 2009 Settlement Agreement between Plaintiffs and Defendant Royal King by Defendants' acts in making false representations regarding Defendants' sales.  Plaintiffs further allege that Defendant Royal King breached the Settlement Agreement by, *inter alia*:  (1) paying Plaintiffs less than the contractually agreed upon 12% of all Royal King's sales of the products at issue in the prior litigation (captioned *Luv n' care, Ltd. et al.* v. *Royal King Infant Products Co., Ltd.*, 2:08-cv-163 (E.D. Tex.)) (hereinafter the "Prior Litigation"); (2) by selling the Settlement Products after July 22, 2009 in violation of the Agreement; and (3) by selling versions of the

---

[2]  By reason of the Court's ruling on Rule 12 motions, Plaintiffs' claim for fraud in the inducement is asserted against both Defendants, while their claims for breach of contract and interference are now asserted against only Royal King.

Settlement Products (the "Further Products"[3]) likely to cause confusion with Plaintiffs' products after the June 22, 2009 execution of the Settlement Agreement, also in violation of the Agreement.  Plaintiffs further allege that Royal King has knowingly and tortiously interfered with Plaintiffs' existing and prospective contractual and business relations with certain third parties.

Defendants deny that Royal King breached the Settlement Agreement, that Defendants committed fraud in the inducement of that Agreement, or that Royal King has interfered with Plaintiffs' existing or prospective contractual or business relations.

Defendants seek damages for (1) breach of the Settlement Agreement, (2) fraud in the inducement of that Agreement, and (3) interference with existing and prospective contractual and business relations.  Plaintiffs deny that they breached the Settlement Agreement, that they committed fraud in the inducement of that Agreement, or that they have interfered with Royal King's existing or prospective contractual or business relations.

**D.      CONTENTIONS OF THE PARTIES**

**Plaintiffs' Contentions**

1.   During the negotiations leading up to the Settlement Agreement, Defendants knowingly and intentionally underrepresented Royal King's sales of the products at issue in the Prior Litigation.

2.   Those representations were material to the Settlement Agreement.

3.   Plaintiffs relied on Defendants' representations as to their sales and relied in agreeing to the terms of the Settlement Agreement and settling the Prior Litigation.

---

[3]  Defendants do not agree that the "Further Products" are versions of the Settlement Products likely to cause confusion.  Defendants will, however, use the term "Further Products" to refer to accused products in the Amended Complaint that are not Settlement Products.

4. Plaintiffs were not aware, and reasonably could not have been aware, prior to the execution of the Settlement Agreement that Defendants, during negotiations leading up the Settlement Agreement, had misrepresented Royal King's sales.

5. Defendant Dalbir Khurana and Eddie Hakim negotiated the terms of the June 2009 Settlement Agreement.

6. Defendant Dalbir Khurana was the only representative of Royal King who negotiated the Settlement Agreement with Eddie Hakim.

7. Eddie Hakim was the only representative of Luv n' care and Admar who negotiated the Settlement Agreement with Dalbir Khurana.

8. Plaintiffs have been damaged by being fraudulently induced to enter the Settlement Agreement.  Specifically, Plaintiffs were underpaid to settle the Prior Litigation.

9. That underpayment further constitutes a breach by Royal King of paragraph 1 of the Settlement Agreement, which has damaged Plaintiffs as set forth above.

10. Royal King breached paragraph 6 of the Settlement Agreement by selling various Settlement Products after July 22, 2009, in violation of paragraph 6 of the Agreement.

11. Royal King also breached paragraph 6 of the Settlement Agreement by its sales of the Further Products, the Further Products being versions of the products in the Prior Litigation that are likely to cause confusion with LNC's products.

12. Plaintiffs have been damaged by Royal King's sales of the Further Products and are entitled to at least 12% of Royal King's sales revenues from the Further Products, whether those sales are made before, during, or after trial in this matter.

13. Royal King should be enjoined from selling the products at issue in this lawsuit and any further versions of these products that are likely to cause confusion with Plaintiffs' products.

14. Royal King has wrongfully interfered with Plaintiffs' contractual and/or business relations with at least the following third parties: HEB, New Valmar's customers, and Walmart Mexico.

15. Royal King was aware that Plaintiffs were selling and/or planning to sell their products to these third parties and/or to retailers of these third parties, and Royal King interfered with those sales and/or planned sales by causing the third parties and/or retailers of the third parties to instead purchase the Further Products which are confusingly similar to Plaintiffs' products.

16. Royal King's acts of interference have damaged Plaintiffs' sales and business relationships with these third parties.

17. Royal King's acts of interference were committed maliciously and with knowledge of Plaintiffs' existing and prospective contracts and business relations.

18. Royal King breached the Settlement Agreement willfully and intentionally.

19. During discovery in this lawsuit, Royal King has underrepresented its sales of the Further Products.

20. During this litigation, Royal King has destroyed documents in its possession containing information relevant to Plaintiffs' claims, which information cannot be obtained elsewhere.

21. Defendants have withheld relevant documents in this lawsuit without justification or protective order.

22. Defendants had access to relevant sales information regarding the products at issue in this case and have deliberately chosen not to produce this information to Plaintiffs even though this information cannot be obtained elsewhere.

23. Asian Business Sourcing ("ABS") is an agent, affiliate, and/or alter ego of Royal King.

24. Royal King has access to ABS documents containing information that is relevant to Plaintiffs' claims and not obtainable elsewhere and has deliberately not produced these documents to Plaintiffs.

25. Defendants have produced no sales data for the Further Products that were sold by Royal King after the Settlement Agreement and before March 2010.

26. Defendants have produced no sales data whatsoever for certain Further Products that were sold after the Settlement Agreement.

27. Defendants have provided insufficient back-up documentation to support the summarized sales data that Defendants created in connection with this litigation.

28. Defendants have underrepresented their summarized sales data of the products at issue in this case.

29. The costs and profit margins provided by Defendants in this case for the products at issue are inaccurate and/or substantially imprecise.

30. Under penalty of perjury, Defendants have repeatedly made false statements in connection with this case and the Prior Litigation.

31. Plaintiffs never agreed to release any of the Further Products from the language of paragraph 6 of the Settlement Agreement.

32. Plaintiffs in no way fraudulently induced Royal King to enter the Settlement Agreement.

33. Plaintiffs have in no way wrongfully interfered with any of Royal King's customers.

34. Royal King has suffered no damage from any of the acts Royal King alleges in its counterclaims to have been committed by Plaintiffs.

35. Plaintiffs' settlement agreement with Walgreen in no way released Royal King from any of Plaintiffs' claims in this lawsuit.

36. Defendants' other defenses and contentions underlying their defenses to Plaintiffs' claims are likewise meritless.

37. Representatives of Royal King, including Defendant Dalbir Khurana, have attended baby products trade shows in Texas and elsewhere.

38. Plaintiffs' Damages Expert's anticipated supplemental damages report is allowable in view of Defendants' late and deficient production of documents and information relating to damages.  Not allowing Plaintiffs' damages expert to supplement his report and to testify thereon at trial would be highly prejudicial to Plaintiffs.

**Defendants' Contentions**

a.     **Defendants' Contentions re Plaintiffs' Claims**

      **Breach of Contract.**  Plaintiffs' claim for breach of the Settlement Agreement is without merit to the extent that it is predicated upon a contention that Royal King underreported its pre-Settlement Agreement sales of products because: (1) Royal King did not underreport its pre-Settlement Agreement sales; and (2) the Settlement Agreement releases any claims in contract that Plaintiffs might otherwise have had with regard to the alleged underreporting of

pre-Settlement Agreement sales.  Plaintiffs' contract claim with regard to Royal King's pre-Settlement Agreement sales of products is barred by the doctrines of estoppel and waiver to the extent that it is predicated upon any products not identified in Exhibit A to the Settlement Agreement, given that Plaintiffs induced Royal King to enter into the Settlement Agreement by representing that they had no concern with any products then being sold by Royal King, other than those identified in Exhibit A to that Agreement.  To the extent that Plaintiffs' contract claim with regard to pre-Settlement Agreement sales of products is based upon any products sold by Royal King to Walgreen or Atico, that claim is barred by the October 6, 2010 settlement entered into among Plaintiffs, Walgreen, and Atico – a settlement that expressly released all of Plaintiffs' claims against Royal King for products it had sold to Walgreen or Atico up to October 6, 2010.

Plaintiffs' claim for breach of the Settlement Agreement is without merit to the extent that it is predicated upon a contention that Royal King failed to pay royalties on products that it sold during the 30 days after the date of the Settlement Agreement because Royal King did not, during the 30-day period after such date, sell any products as to which it was required to pay a royalty.  Plaintiffs' contract claim with regard to Royal King's sales of products in the 30-day window after the date of the Settlement Agreement is barred by the doctrines of estoppel and waiver to the extent that it is predicated upon any products that are not identified in the attachment to the Settlement Agreement and that Royal King was selling as of the date of that Settlement Agreement, given that Plaintiffs induced Royal King to enter into the Settlement Agreement by representing that they had no concern with any other products then being sold by Royal King.  To the extent that Plaintiffs' contract claim with regard to Royal King's sales of products in the 30-day window after the date of the Settlement Agreement is based upon any products sold by Royal King to Walgreen or Atico, that claim is barred by the October 6, 2010

settlement of the Walgreen lawsuit entered into among Plaintiffs, Walgreen, and Atico – a settlement that expressly released all of Plaintiffs' claims against Royal King for products it had sold to Walgreen or Atico up to October 6, 2010.

Plaintiffs' claim for breach of the Settlement Agreement is without merit to the extent that it is predicated upon a contention that more than 30 days after the date of the Settlement Agreement Royal King sold products that it was not allowed to continue to sell, given that the Settlement Agreement did not prohibit the sale of any products that Royal King continued to sell.[4]  Plaintiffs' contract claim with regard to Royal King's post-Settlement Agreement sales of products is barred by the doctrines of estoppel and waiver to the extent that it is predicated upon any products that are not identified in the attachment to the Settlement Agreement and that Royal King was selling as of the date of that Settlement Agreement, given that Plaintiffs induced Royal King to enter into the Settlement Agreement by representing that they had no concern with any other products then being sold by Royal King.  To the extent that Plaintiffs' contract claim with regard to post-Settlement Agreement sales of products is based upon any products sold by Royal King to Walgreen or Atico on or before October 6, 2010 – or upon Royal King's sale to Walgreen or Atico of the "third-generation hard spout product" either before or after October 6, 2010 – that claim is barred by the October 6, 2010 settlement of the Walgreen lawsuit entered into among Plaintiffs, Walgreen, and Atico – a settlement that expressly released all of Plaintiffs' claims against Royal King for (1) products it had sold to Walgreen or Atico up to October 6, 2010 and (2) sales of the "third-generation hard spout product" to Walgreen or Atico either before or after October 6, 2010.

---

[4]  Furthermore, Plaintiffs must show, on a product-by-product basis, that the Settlement Agreement prohibited the sale of any of the products at issue

Finally, Plaintiffs' claim for breach of contract must fail due to the fact that Plaintiffs breached the Settlement Agreement.

**<u>Fraudulent Inducement.</u>** Plaintiffs' claim for fraud in the inducement of the Settlement Agreement is without merit because: (1) Defendants did not underreport Royal King's pre-Settlement Agreement sales; (2) assuming *arguendo* that Defendants had underreported any such sales, Plaintiffs have no evidence that either Royal King or Mr. Khurana knew that the sales were underreported, and (3) Plaintiffs could not have reasonably relied upon Defendants' allegedly false representations because, prior to entering into the Settlement Agreement, they or their counsel had the Walgreen Spreadsheet on which they rely for their claim that Royal King underreported sales, as well as other information that allowed them to calculate the revenues that Royal King would have received if it had sold the volume of products identified in the Walgreen Spreadsheet, and they therefore knew or should have known of their claim for fraud in the inducement.[5] Plaintiffs' fraud claim is barred by the doctrines of estoppel and waiver to the extent that it is predicated upon any products that are not identified in the attachment to the Settlement Agreement and that Royal King was selling as of the date of that Settlement Agreement, given that Plaintiffs induced Royal King to enter into the Settlement Agreement by representing that they had no concern with any other products then being sold by Royal King. Plaintiffs' fraud claim is barred by the one-year statute of limitations of Louisiana law because Plaintiffs knew, or should have known, of the facts underlying their fraud claim more than a year before they filed it.[6] Plaintiffs' fraud claim is also barred by the October 6, 2010 settlement of

---

[5] Plaintiffs' fraudulent inducement claim is also without merit as to Khurana because there is no evidence that he knew or should have known of the alleged underreporting or that it was unreasonable for him to rely upon sales information provided by Royal King's accounting department.

[6] As explained in Royal King's motion for partial summary judgment [Dkt. 95], under Texas choice-of-law principles, Louisiana law applies to Plaintiffs' fraud claim because it is based upon alleged representations made to Plaintiffs in Louisiana, acted upon by Plaintiffs in Louisiana, and allegedly causing damage in Louisiana.

the Walgreen lawsuit entered into among Plaintiffs, Walgreen, and Atico – a settlement that expressly released all of Plaintiffs' claims against Royal King for products it had sold to Walgreen or Atico up to October 6, 2010; without Royal King's pre-Settlement Agreement sales to Walgreen through Atico, Plaintiffs have no argument that Royal King underreported its sales. In addition, Plaintiffs' testimony that it was "inconceivable" that Royal King's sales revenues were accurate and their alleged belief that Mr. Khurana is a "liar" demonstrates that they did not rely on those sales representations.

      **Interference.**  Plaintiffs' claims for interference with existing and prospective contractual and business relations are without merit because: (1) Royal King did not engage in any independently wrongful conduct, a predicate to an interference claim; (2) Plaintiffs cannot show a causal link between any alleged conduct by Royal King and any lost sales to retailers; (3) Plaintiffs cannot prove that Royal King knew about any of Plaintiffs' alleged business relations or contracts; (4) Royal King itself did not sell products to some of the customers as to whom Plaintiffs claim interference, and Plaintiffs may not base an interference claim upon the resale of Royal King products by customers who purchased those products from Royal King; and (5) Plaintiffs do not have direct relationships with retailers in any country outside of the United States and therefore may not pursue an interference claim with regard to alleged disruption of their relationship with such retailers.  Plaintiffs' interference claims are barred by the doctrines of estoppel and waiver to the extent that they are predicated upon any products that are not identified in the attachment to the Settlement Agreement and that Royal King was selling as of the date of that Settlement Agreement, given that Plaintiffs induced Royal King to enter into the Settlement Agreement by representing that they had no concern with any other products then being sold by Royal King.  Plaintiffs' interference claims are also barred by the October 6, 2010

settlement of the Walgreen lawsuit entered into among Plaintiffs, Walgreen, and Atico – a settlement that expressly released all of Plaintiffs' claims against Royal King for products it had sold to Walgreen or Atico up to October 6, 2010 – to the extent that the interference claims are based upon such sales.

**Damages.**  On April 26, 2013, Plaintiffs served a report from their damages expert David R. Payne.  That report contained no calculation of the money being sought by Plaintiffs, based upon either Plaintiffs' damages or Royal King's profits, ostensibly because Royal King had not produced information of relevance to the damages calculation, including sales data.  On July 22, 2013, Royal King produced a summary of international sales pursuant to the Court's Order on Plaintiffs' motion to compel; on August 19, 2013, at Plaintiffs' request Royal King produced an updated summary of domestic sales.  Plaintiffs have not supplemented Mr. Payne's expert report, and the deadline for supplementation has now passed.  *See* Fed. R. Civ. P. 26(a)(2)(D), 26(e)(2).

On September 10, 2013, Plaintiffs indicated that their damages would be predicated solely upon a claimed 12% royalty, and that they would not be pursuing their own lost profits. But Plaintiffs have provided no evidence, documentary or testimonial, that a 12% royalty is proper.  Thus, as Plaintiffs cannot show damages for any of their claims, all of their claims fail for lack of proving damages.

In addition, for the reasons stated above, Plaintiffs cannot establish liability, and they therefore cannot show any damages.  Assuming *arguendo* that Plaintiffs could establish liability, (1) Plaintiffs' claim for interference is speculative because Plaintiffs cannot show that they – rather than another company – would have made the sales made by Royal King; and (2) Plaintiffs' claim for damages based upon Royal King's sales fails with regard to each product that Plaintiffs cannot establish to be covered by the Settlement Agreement.

Plaintiffs have sought punitive damages on their claims for fraud and interference.  Under Louisiana law, which governs Plaintiffs' fraud claim, punitive damages are unavailable on Plaintiffs' fraud claim.  In addition, under Texas law, punitive damages are capped at the greater of (a) $200,000 or (b) the amount of compensatory damages.

### b.    Defendants' Contentions re Royal King's Claims Against Defendants

**Breach of Contract.**  Royal King's claim for breach of the Settlement Agreement is based upon the fact that Plaintiffs breached the release in the Settlement Agreement by suing Royal King for pre-Settlement Agreement sales.  First, Plaintiffs breached the release to the extent that they have brought claims for breach of contract or interference based upon pre-Settlement Agreement sales because the Settlement Agreement releases all such claims.  Second, Plaintiffs breached the release by bringing their claim for fraudulent inducement of the Settlement Agreement when they could not bring such a claim without rescinding the Settlement Agreement.  Third, they breached the Settlement Agreement by suing on the "Further Products" because such a suit is prohibited by the release in the Settlement Agreement.

**Fraudulent Inducement.**  Royal King's claim for fraud in the inducement of the Settlement Agreement is based upon the fact that, in order to induce Royal King to enter into the Settlement Agreement, Plaintiffs (1) promised to release Royal King from all claims based upon pre-Settlement Agreement sales of products and (2) told Royal King that Plaintiffs had no concerns with regard to any products then being sold by Royal King that were not identified in Exhibit A to the Settlement Agreement as products that Royal King could no longer sell, when Plaintiffs in fact intended to file a new lawsuit against Royal King based upon (a) pre-Settlement Agreement sales of products and (b) Royal King's continued sale of products that were being

sold by Royal King at the time of the Settlement Agreement and were not identified in Exhibit A to the Settlement Agreement as products that Royal King could no longer sell.

**Interference.**  Royal King's claims for interference with existing and prospective contractual and business relations are based upon Plaintiffs' wrongful practice of threatening and suing Royal King's customers for selling Royal King products, inducing those customers to stop purchasing products from Royal King.  As a result of Plaintiffs' wrongful conduct, Royal King has not only lost customers in the United States but has been forced from the U.S. market altogether, instead selling products to a wholesaler who resells those products to U.S. retailers.

**Damages.**  As a result of Plaintiffs' breach of the release, Royal King has suffered damages in the form of the attorneys' fees that it has incurred to date, in an amount to be proven at trial but currently in excess of $1 million.  As a result of Plaintiffs' fraudulent inducement, Royal King entered into the Settlement Agreement pursuant to which it paid Plaintiffs $396,000 in royalties and $500,000 in attorneys' fees in exchange for a release that proved to be worthless to Royal King.  In addition, it has had to pay attorneys' fees in excess of $1 million in this litigation due to Plaintiff's fraudulent inducement.  Royal King will prove the damages it lost due to Plaintiffs' interference at trial.

Under Texas law, Royal King is entitled to recover its attorneys' fees upon prevailing on its claim for breach of the Settlement Agreement.  Under New York law, Royal King is entitled to recover its attorneys' fees upon establishing that: (1) the Walgreen settlement releases certain claims being asserted by Plaintiffs against Royal King in part or in full; and (2) Plaintiffs' breach of that release is obvious and/or otherwise in bad faith.

Royal King seeks punitive damages on its claim for interference.[7]

---

[7]  Royal King is not seeking punitive damages on its claim for fraud because, under Louisiana law, which applies to Royal King's claim for fraud against Plaintiffs, punitive damages are unavailable on a claim like the fraud claim

Royal King seeks rescission of the Settlement Agreement based upon fraud in the inducement and material failure of consideration arising from Plaintiffs' filing of suit in breach of the release in the Settlement Agreement.  Because Royal King's prayer for rescission sounds in equity, it is to be decided by the Court.

E.     **STIPULATIONS OF FACT**

1. Subject matter jurisdiction is proper in this Court.

2. Venue is proper in this Court.

3. Plaintiff Luv n' care, Ltd. is a Louisiana corporation with its principal place of business in Monroe, Louisiana.  At least some of the Luv n' care products at issue in this case are manufactured either in China or India.

4. Plaintiff Admar International, Inc. is a Delaware corporation with its principal place of business in Monroe, Louisiana.

5. Admar is an affiliate of Luv n' care that holds the rights to Luv n' care's trademarks.

6. Eddie Hakim is the principal of Luv n' care and Admar.

7. Defendant Royal King is a corporation in Thailand, with a principal place of business in Bangkok, Thailand.  Royal King manufactures at least some of its baby products at its factory in Thailand.

8. Defendant Dalbir Khurana was a principal of Royal King until 2011.

9. Luv n' care and Royal King are baby products companies that sell baby products throughout the world.

10. Luv n' care and Admar previously sued Royal King in this Court in April 2008 (the "Prior Litigation").

asserted by the parties against each other.  Should the Court apply Texas law to the parties' fraud claims, Royal King will seek punitive damages on the fraud claim.

11. In the Prior Litigation, Luv n' care and Admar accused Royal King of trademark infringement, unfair competition, and tortious interference.

12. In the Prior Litigation, Luv n' care and Admar accused Royal King of unlawfully selling products that were likely to cause consumers to confuse Royal King's products with Luv n' care's products.

13. The parties settled the Prior Litigation and signed a Settlement Agreement on June 22, 2009.

14. The Settlement Agreement was duly executed by Plaintiffs and Royal King and is valid and enforceable.

15. During the settlement negotiations, Defendant Dalbir Khurana represented to Eddie Hakim that Royal King's sales of the products in dispute in the Prior Litigation ("Settlement Products") amounted to $3.3 million, $2.3 million of which were U.S sales.

16. As part of the Settlement Agreement, the parties agreed that Royal King would pay Luv n' care and Admar 12% of its past sales of the Settlement Products, plus attorney's fees.

17. As part of the Settlement Agreement, Royal King agreed to pay, and did pay, Luv n' care and Admar $396,000 (12% of $3.3 million) plus $500,000 in attorney's fees.

18. On or about May 13, 2008, Luv n' care and Admar filed a lawsuit in the United States District Court for the Southern District of New York against parties including Walgreen for infringement of Luv n' care and Admar's trade dress in their product designs (the "Walgreen Lawsuit").

19. Walgreen purchased at least some of its Royal King products from a company named Atico, which purchased those products from Royal King.

20. On May 12, 2009, in connection with a deposition in the Walgreen Lawsuit, Walgreen produced to Luv n' care and Admar eight pages of accounting documents marked Highly Confidential – Outside Attorney's Eyes Only (the "Walgreen Spreadsheet").

21. On October 6, 2010, during the trial of the Walgreen Lawsuit, Luv n' care and Admar entered into a settlement of that lawsuit with Walgreen and Atico.  The settlement, which was confidential, was entered into in court, and the court reporter prepared a transcript of that settlement.

22. On the same day, the New York court dismissed the Walgreen Lawsuit pursuant to the settlement.

23. On November 4, 2010, Luv n' Care and Admar filed their Complaint in this action.

24. In the Complaint, Luv n' care and Admar have sued Royal King for fraudulently underrepresenting sales of products sold before Royal King, Luv n' care, and Admar entered into the June 22, 2009 Settlement Agreement, and for breach of contract and tortious interference for sales of products sold after the June 22, 2009 Settlement Agreement.

25. Referencing the exhibits to the Amended Complaint in this case and, in particular, the products marked with "B" numbers, Royal King has sold at least the following Further Products since the Settlement Agreement was signed: B21, B22, B23, B25, B26, B27, B28, B29, B40, B41, B44 B62-A, B64 (not the spoon product), B67, B68-A (the one on the left), B69, B100, B101, B102, B103, B104, B105, and B106.

26. Royal King sold at least some of the Further Products in the time period between June 2009 when the Settlement Agreement was signed, and March 2010.

27. Royal King has not provided Plaintiffs with any sales information from its own records for the Further Products it sold between June 2009 and March 2010.

28. Since the Settlement Agreement was signed, Royal King has sold various Further Products to at least the following US distributors and retailers: Cudlie, Everwest, Atico, Regent Baby Products, Kmart/Sears, Toys R' Us, HEB, Dubon, Greenbrier/Dollar Tree, and 99 Cents Stores.

29. Since the Settlement Agreement was signed, the Further Products have been sold by at least the following additional retailers and distributors: Dollar General, Walgreens, and Kruidvat.

30. At least the following third-party sellers bought Royal King's Settlement Products before the Settlement Agreement was signed: Atico, Regent Baby Products, Dollar General, Walgreens, Everwest, Kmart/Sears, and Dubon.

31. Royal King had used the License Trademark of Sesame Beginnings and Walt Disney on some of the Settlement Products.

32. Since the Settlement Agreement was signed, Royal King has sold Further Products in at least the following countries: United States, Mexico, Canada, Iran, Russia, South Africa, United Arab Emirates, Venezuela, Malaysia, Netherlands, Australia, Philippines, Romania, Taiwan, Ukraine, India,  Dominican Republic, Egypt, Panama, Poland, United Kingdom, Ecuador, France, Thailand, Colombia, Argentina, Indonesia, Pakistan, Greece, Sweden, Saudi Arabia, Algeria, Chile, Italy, Peru, Spain, Tunisia, Uruguay, Brazil, Bulgaria, and Kenya.

33. Before the Settlement Agreement was signed, Royal King sold Settlement Products in at least the following countries and regions: United States, Canada, Mexico, Australia, United Arab Emirates, India, Panama, Poland, Saudi Arabia, South Africa, Venezuela, Argentina, Chile, Denmark, Ecuador, Netherlands, Peru, United Kingdom, Central America, Colombia, Germany, Malaysia, Belgium, Bulgaria, France, Italy, Greece, Israel, Spain, Uruguay, Portugal, and Ireland.

**F.  CONTESTED ISSUES OF FACT**

**Plaintiffs' Contested Issues of Fact**

1. During negotiations leading up to the Settlement Agreement, Defendants knowingly and intentionally underrepresented Royal King's sales of the products at issue in the Prior Litigation and committed fraud in doing so.

2. These representations were material to the Settlement Agreement.

3. Plaintiffs reasonably relied on Defendants' representations as to their sales in agreeing to the terms of the Settlement Agreement and settling the Prior Litigation.

4. Plaintiffs have been damaged by being fraudulently induced to enter the Settlement Agreement.  Specifically, Plaintiffs were underpaid to settle the Prior Litigation.

5. That underpayment further constitutes a breach by Royal King of paragraph 1 of the Settlement Agreement, which has damaged Plaintiffs as set forth above.

6. Royal King has breached paragraph 6 of the Settlement Agreement by selling the Settlement Products after July 22, 2009 in violation of the Settlement Agreement.

7. Royal King has also breached paragraph 6 of the Settlement Agreement by selling versions of the Settlement Products ("Further Products") that are likely to cause confusion with LNC's products.

8. Plaintiffs have been damaged by Royal King's sales of the Further Products and are entitled to at least 12% of Royal King's sales revenues from the Further Products, whether those sales are made before, during, or after trial in this matter.

9. Royal King has wrongfully interfered with Plaintiffs' contractual and/or business relations with at least the following third parties: HEB, New Valmar's customers, and Walmart Mexico.

10. Royal King was aware that Plaintiffs were selling and/or planning to sell their products to these third parties and/or to retailers of these third parties, and Royal King interfered with those sales and/or planned sales by causing the third parties and/or retailers of the third parties to instead purchase the Further Products which are confusingly similar to Plaintiffs' products.

11. Royal King's acts of interference have damaged Plaintiffs' sales and business relationships with these third parties.

12. Royal King's acts of interference were committed maliciously and with knowledge of Plaintiffs' existing and prospective contracts and business relations.

13. Royal King breached the Settlement Agreement willfully and intentionally.

14. Plaintiffs should be awarded their reasonable attorney's fees incurred in connection with this lawsuit.

15. Plaintiffs should be awarded punitive/exemplary damages in view of the fraudulent, willful, and malicious nature of Defendants' acts.

16. During discovery in this lawsuit, Royal King has underrepresented its sales of the Further Products.

17. During this litigation, Royal King has destroyed documents in its possession containing information relevant to Plaintiffs' claims, which information cannot be obtained elsewhere.

18. Defendants did not institute a litigation hold after this lawsuit commenced.

19. Defendants have withheld relevant documents in this lawsuit without justification or protective order.

20. Defendants had access to relevant sales information regarding the products at issue in this case and have deliberately chosen not to produce this information to Plaintiffs even though this information cannot be obtained elsewhere.

21. Asian Business Sourcing ("ABS") is an agent, affiliate, and/or alter ego of Royal King.

22. Royal King has access to ABS documents containing information that is relevant to Plaintiffs' claims and not obtainable elsewhere and has deliberately not produced these documents to Plaintiffs.

23. Defendants have produced no sales data for the Further Products that were sold by Royal King after the Settlement Agreement and before March 2010.

24. Defendants have produced no sales data whatsoever for certain Further Products that were sold after the Settlement Agreement.

25. Defendants have produced no sales data whatsoever for certain retailers/distributors to whom Royal King sold Further Products after the Settlement Agreement.

26. Defendants have provided insufficient back-up documentation to support the summarized sales data that Defendants created in connection with this litigation.

27. Defendants have underrepresented their summarized sales data of the products at issue in this case.

28. The costs and profit margins provided by Defendants in this case for the products at issue are inaccurate.

29. Under penalty of perjury, Defendants have repeatedly made false statements in connection with this case and the Prior Litigation.

30. Plaintiffs were not aware, and reasonably could not have been aware prior to the execution of the Settlement Agreement that Defendants, during negotiations leading up the Settlement Agreement, had misrepresented Royal King's sales of the Settlement Products.

31. Plaintiffs never agreed to release any of the Further Products from the language of paragraph 6 of the Settlement Agreement.

32. Plaintiffs in no way fraudulently induced Royal King to enter the Settlement Agreement.

33. Plaintiffs have in no way wrongfully interfered with any of Royal King's customers.

34. Plaintiffs have in no way breached the Settlement Agreement.

35. Royal King has suffered no damage from any of the acts Royal King alleges in its counterclaims to have been committed by Plaintiffs.

**<u>Defendants' Contested Issues of Fact</u>**

1.      The parties were represented by counsel in connection with the negotiation of the June 22, 2009 Settlement Agreement.

2.      Defendants did not underreport Royal King's pre-Settlement Agreement sales of the Products identified in Exhibit A to the Settlement Agreement.

3.      Royal King never intended to underreport Royal King's pre-Settlement Agreement sales of the Products identified in Exhibit A to the Settlement Agreement.

4.      Khurana never intended to underreport Royal King's pre-Settlement Agreement sales of the Products identified in Exhibit A to the Settlement Agreement.

5.      Plaintiffs knew or should have known, prior to June 22, 2009, of the facts they allege demonstrate that Royal King underreported its sales.

6.      Plaintiffs did not reasonably rely on any alleged underreporting of sales by Royal King prior to entering into the June 22, 2009 Settlement Agreement.

7.      Plaintiffs suffered no damage by entering into the June 22, 2009 Settlement Agreement.

8.      Royal King did not sell any of the Products identified in Exhibit A to the Settlement Agreement after June 22, 2009.

9.      After June 22, 2009, Royal King did not sell any products that constitute versions of the Settlement Products.

10.     Assuming *arguendo* that Royal King did sell products that constitute versions of the Settlement Products after June 22, 2009, those products were not confusingly similar to any Luv n' care product or packaging.

11.     Royal King did not know of Plaintiffs alleged actual and potential contracts and business relationships.

12.     Royal King did not engage in any independently tortious conduct that was intended to disrupt Plaintiffs' existing or prospective contractual or business relations with any retailers known to Royal King as customers of Plaintiffs.

13.     Royal King committed no independently wrongful conduct that actually disrupted Plaintiffs' existing or prospective contractual or business relations with any retailers known to Royal King as customers of Plaintiffs.

14.     The June 22, 2009 Settlement Agreement released Plaintiffs' claims for breach of contract and interference based upon pre-Settlement Agreement sales of the Products identified in Exhibit A to the Settlement Agreement.

15.     The June 22, 2009 Settlement Agreement, along with statements made by Plaintiffs in connection with the negotiation of that Agreement, bars Plaintiffs from pursuing claims for breach of contract or interference based upon Royal King's continued sale, after June 22, 2009, of products that it was selling prior to June 22, 2009, other than the Products identified in Exhibit A to the Settlement Agreement.

16.     The October 6, 2010 settlement in the Walgreen lawsuit bars Plaintiffs from pursuing any claims for breach of contract or interference based upon products sold by Royal King to Walgreen or Atico prior to October 6, 2010.

17.     The October 6, 2010 settlement in the Walgreen lawsuit bars Plaintiffs from pursuing their claim against Royal King for fraudulent inducement of the June 22, 2009 Settlement Agreement because that claim is premised upon alleged underreporting of products sold by Royal King through Atico to Walgreen.

18.     Plaintiffs' claim for fraud in the inducement of the June 22, 2009 Settlement Agreement is barred by the one-year statute of limitation of Louisiana law because Plaintiffs

knew or should have known, more than a year before bringing suit, of the alleged facts upon which they base that claim.

19.     Plaintiffs' claims are barred by estoppel.

20.     Plaintiffs' claims are barred by waiver.

21.     Plaintiffs' claims are barred by laches.

22.     Plaintiffs' claims are barred by their unclean hands.

23.     Plaintiffs suffered no monetary damage as a result of Royal King's alleged breach of contract, Defendants' alleged fraud in the inducement, and Royal King's alleged interference.

24.     Plaintiffs are not entitled to recover punitive damages on any claim.

25.     Plaintiffs are not entitled to recover attorneys' fees from Royal King.

26.     Plaintiffs breached the release in the June 22, 2009 Settlement Agreement by filing their claims for breach of contract and interference.

27.     Plaintiffs breached the release in the June 22, 2009 Settlement Agreement by filing their claim for fraud in the inducement.

28.     Plaintiffs fraudulently induced Royal King to enter the June 22, 2009 Settlement Agreement by representing to Royal King that they would not bring a new lawsuit based upon Royal King's pre-Settlement Agreement sales, while intending to bring just such a new lawsuit.

29.     Plaintiffs fraudulently induced Royal King to enter the June 22, 2009 Settlement Agreement by representing to Royal King that the Settlement Agreement covered all of the products then being sold by Royal King with which Plaintiffs had an issue, while intending to bring a new lawsuit based upon Royal King's continued sale of products not barred by the Settlement Agreement.

30.     Royal King, in entering into the June 22, 2009 Settlement Agreement,  reasonably relied upon Plaintiffs' representation that (a) Plaintiffs would not bring a new lawsuit based upon Royal King's pre-Settlement Agreement sales or (b) the Settlement Agreement covered all of the products then being sold by Royal King with which Plaintiffs had an issue.

31.     Royal King was damaged by Plaintiffs' representation that (a) Plaintiffs would not bring a new lawsuit based upon Royal King's pre-Settlement Agreement sales and (b) the Settlement Agreement covered all of the products then being sold by Royal King with which Plaintiffs had an issue.

32.     Plaintiffs knew the identity of the retailers, wholesalers and distributors to whom Royal King sold products and.

33.     Plaintiffs engaged in independently wrongful conduct that was intended to, and did disrupt Royal King's existing or prospective contractual or business relations with retailers, wholesalers, and distributors known to Plaintiffs as customers of Royal King.

34.     Royal King suffered monetary damage as a result of Plaintiffs' alleged breach of contract, fraud in the inducement, and interference.

35.     Royal King is entitled to recover punitive damages from Plaintiffs on its claims for interference.

36.     Royal King is entitled to recover attorneys' fees from Plaintiffs under Texas law on its claim for breach of the Settlement Agreement.

37.     Royal King is entitled to recover attorneys' fees from Plaintiffs under New York law on the ground that Plaintiffs' pursuit of claims that were released in the Walgreen settlement is an "obvious" breach of contract or otherwise in bad faith.

38.     Plaintiffs failed to preserve and produce documents and information that they had an obligation to produce.

**G.     CONTESTED ISSUES OF LAW**

**Plaintiffs' Contested Issues of Law**

1.   Royal King should be enjoined from selling the Further Products and any further versions of the Further Products or Settlement Products that are likely to cause confusion with LNC's products.

2.   Texas's law on the statute of limitations governs Plaintiffs' fraud claim.

3.   Plaintiffs' fraud claim is not barred by the statute of limitations.

4.   Plaintiffs are entitled to a negative inference against Royal King, based on Royal King's destruction of relevant documents and failure to produce other relevant documents and information in its possession.

**Defendants' Contested Issues of Law**

1.   Whether the reference in paragraph 6 of the Settlement Agreement to "versions of the Products" excludes from paragraph 6 all products that (a) are not Settlement Products and (b) were being sold by Royal King as of the date of the Settlement Agreement.

2.   Whether Louisiana law governs Plaintiffs' fraud claim.

3.   Whether the one-year statute of limitations bars Plaintiffs' fraud claim.

4.   Whether, under Louisiana law, punitive damages are unavailable on Plaintiffs' fraud claim.

5.   Whether Plaintiff may pursue a claim for breach of existing or prospective contractual or business relations based upon Royal King's alleged interference with any retailer to which Plaintiffs do not directly sell products.

6.   Whether, under Fed. R. Civ. P. 37(c)(1), Plaintiffs are precluded from introducing any evidence that is not disclosed in their interrogatory responses, including, *inter alia*, evidence concerning: (a) the bases for Plaintiffs' claim that Royal King underreported pre-Settlement Agreement sales; (b) the customers with whom Royal King allegedly interfered;  (c) the manner in which Royal King's products are allegedly confusingly similar to Plaintiffs' products; and (d) damages.

7.   Whether, under Fed. R. Civ. P. 37(c)(1), Plaintiffs are precluded from introducing any testimony by their damages expert on the grounds that, *inter alia* because his initial report did not quantify Plaintiffs' claimed damages based upon the information then available to him and the time for him to supplement his expert report has now passed.

8.   Whether Defendants are entitled to a negative inference against Plaintiffs based upon: (1) Plaintiffs' deliberate exclusion from their review of documents for production of all e-mails on which any of their attorneys was an author, a recipient, or a cc, or of any of the attachments thereto; (2) Plaintiffs' failure to search for and produce documents that were responsive to certain of Defendants' document requests as to which Plaintiffs promised production without indicating in their response or informing Defendants in any way that such documents were not being produced; and (3) Plaintiffs' failure to preserve documents of relevance to this lawsuit, including allowing such documents to be deleted after they had been kept only for a few months.

9.   Whether Royal King is entitled to rescission of the Settlement Agreement based upon

fraud in the inducement and material failure of consideration arising from Plaintiffs'

filing of suit in breach of the release in the Settlement Agreement.

**H.**   **LIST OF TRIAL WITNESSES**

**Plaintiffs' Witnesses**

Plaintiffs' List of Witnesses is attached as Exhibit A.

Defendants' Objections to Plaintiffs' List of Witnesses is attached as Exhibit B.

**Defendants' Witnesses**

Defendants' List of Witnesses is attached as Exhibit C.

Plaintiffs object to Defendants' calling Morris Cohen as a witness.  Mr. Cohen is trial

counsel for Plaintiffs in this litigation.  For Plaintiffs' trial counsel to be called as a witness

during the trial would be highly irregular and extremely prejudicial.

Furthermore, Mr. Cohen was trial counsel for Plaintiffs throughout the prior litigation

against Defendants, and has been trial counsel for Plaintiffs since the present case was

commenced.  Thus, Defendants have long known of his involvement as counsel in both this case

and the prior one.  They have had several years to raise the issue of his testimony to attempt to

prevent any issues of prejudice in advance, but have failed to do so.

Calling Plaintiffs' trial counsel as a witness in the midst of the trial would also raise

ethical issues, as this is a jury trial.  Likewise, calling him as a witness would also potentially

impinge upon issues of privilege, including those involving attorney-client communications and

30

work product.  To the extent Defendants may allege that they seek to have him testify as to non-privileged facts, his testimony relating to any of the causes of action or defenses in this litigation would be only cumulative of testimony from other fact witnesses.

Moreover, Defendants made no attempt to seek Mr. Cohen's deposition in this case in advance of trial.  To now attempt to conduct discovery of him on the stand would be improper.  Additionally, at no time was Mr. Cohen listed by Plaintiffs as a trial witness in this case, so Defendants cannot now be heard to complain that Plaintiffs have ever represented that his testimony would be available or necessary at trial.  For Defendants to call trial counsel up to the stand would, simply stated, create a sideshow, and is unwarranted.

Defendants object to the above paragraph because: (1) Defendants did not learn of their claim for fraud in the inducement – the claim as to which Mr. Cohen's testimony is relevant – until May 17, 2013, when Defendants received a copy of the Walgreen Spreadsheet from Walgreen; (2) Defendants disclosed to Plaintiffs on June 20, 2013 in their identification of trial witnesses that Mr. Cohen was listed as a trial witness, *cf.* Dkt. 107; (3) Mr. Cohen chose to interject himself as a fact witness in this case by submitting multiple declarations testifying to substantive facts; (4) the fact that Mr. Cohen submitted multiple declarations undercuts Plaintiffs' contention now that his testimony would merely be cumulative; (5) Defendants could not depose Mr. Cohen because he submitted his declarations after the deadline for noticing depositions, and (6) the time for Plaintiffs to object has passed because the deadline for Plaintiffs to object to Defendants' witnesses was September 5, 2013.

I.      **LIST OF TRIAL EXHIBITS**

**Plaintiffs' Trial Exhibits**

Plaintiffs' List of Trial Exhibits is attached as Exhibit D.

Defendants' Objections to Plaintiffs' List of Trial Exhibits is attached as Exhibit E.

**Defendants' Trial Exhibits**

Defendants' List of Trial Exhibits is attached as Exhibit F.

Plaintiffs' Objections to Defendants' List of Trial Exhibits is attached as Exhibit G.

## J.      TESTIMONY DESIGNATIONS

**Plaintiffs' Designations**

Plaintiffs' testimony designations are attached as Exhibit H.

Defendants' objections to Plaintiffs' testimony designations and counter-designations are attached as Exhibit I.  Defendants also object to certain of Plaintiffs' testimony designations from other lawsuits as having been made after the Court-ordered deadline in this matter.

**Defendants' Designations**

Defendants' testimony designations are attached as Exhibit J.

Plaintiffs' objections to Defendants' testimony designations and counter-designations are attached as Exhibit K.  Plaintiffs also object to Defendants' testimony designations as having been made after the Court-ordered deadline in this matter.

## K.      LIST OF ANY PENDING AND ANTICIPATED MOTIONS

The following motions are currently pending before the Court:

1. Defendants Royal King Infant Products Co., Ltd. and Dalbir Khurana's Motion for Partial Summary Judgment Against Count II of Amended Complaint for Fraud in the Inducement (Dkt. 95).

2. Defendant Royal King Infant Products Co., Ltd.'s Motion for Partial Summary Judgment on Royal King's Third Counterclaim for Breach of Contract  (Dkt. 100).

3. Defendant and Counterclaimant Royal King Infant Products Co., Ltd.'s  Motion for Summary Judgment on Plaintiffs' Count I for Breach of Contract and Counts III Through VI for Tortious Interference with Existing and Prospective Contractual Relations and Existing and Prospective Business Relations (Dkt. 108).

4. Plaintiffs' Motion for Partial Summary Judgment on Defendants' Eighth Counterclaim for Fraud in the Inducement (Dkt. 120).

5. Motions *in Limine* of Defendant and Counterclaimant Royal King Infant Products Co, Ltd. and Defendant Dalbir Khurana (Dkt. 149).

In addition, based on testimony elicited during recent depositions of Defendant Khurana and a representative of Defendant Royal King, in the near future Plaintiffs expect to file a motion for sanctions against Defendants for destroying relevant documents during this litigation and failing to institute a litigation hold to retain relevant documents following commencement of this lawsuit, and/or expect to request that the Court provide the jury with instructions as to a negative inference regarding the same.

Plaintiffs' anticipated motion for sanctions, including a negative inference, will also be based on Royal King's violation of the Court's July 1, 2013 Order granting-in-part Plantiffs' motion to compel sales information concerning the products at issue in this case.  Through painstaking efforts to analyze relevant sales information from other sources, Plaintiffs have

recently determined that Royal King's production of sales information in response to the July 1st Order is highly deficient.

Because of these violations and deficiencies, Plaintiffs also anticipate moving the Court to postpone the trial to allow Plaintiffs' damages expert sufficient time to gather and analyze information from third party sources that Royal King should have provided but has not, and to allow the expert sufficient time to prepare a supplemental damages report based on those findings.

Based on testimony elicited during the depositions of Plaintiffs' Rule 30(b)(6) designees Edward Hakim and Joseph Hakim on September 10, 2013 and September 11, 2013, in the near future Defendants expect to file a motion for sanctions against Plaintiffs, and/or expect to request that the Court provide the jury with instructions as to a negative inference, with regard to the following: (1) Plaintiffs' deliberate exclusion from their review of documents for production of all e-mails on which any of their attorneys was an author, a recipient, or a cc, or of any of the attachments thereto; (2) Plaintiffs' failure to search for and produce documents that were responsive to certain of Defendants' document requests as to which Plaintiffs promised production without indicating in their response or informing Defendants in any way that such documents were not being produced; and (3) Plaintiffs' failure to preserve documents of relevance to this lawsuit, including allowing such documents to be deleted after they had been kept only for a few months.

In addition, Defendants may be filing a motion to strike in the very near future.  During a previous meet-and-confer, Plaintiffs agreed to strike their improper "vexatious litigation" defense.  They also agreed to inform Defendants after the Singapore depositions whether they would agree to strike their prayer for relief based on vexatious litigation.  Although Plaintiffs

agreed on August 19, 2013 to strike their alleged "vexatious litigation" defense, they have failed

to do so.  If Plaintiffs do not strike their "vexatious litigation" defense by the close of business on

Thursday, September 19, 2013, Defendants will be filing their motion to strike on Friday,

September 20, 2013 so that it will be on file before the Pretrial Conference on Monday,

September 23, 2013.

Plaintiffs state that they intend to file a motion to withdraw the vexatious litigation

defense in the next several days.

## L.    PROBABLE LENGTH OF TRIAL

### Plaintiffs' Estimate

Plaintiffs estimate the probable length of trial is 4-6 days.

### Defendants' Estimate

Defendants estimate the probable length of trial at 10 hours per side, assuming that all of

the claims that are currently asserted remain in the case after the Court rules on the

pending motions for partial summary judgment and summary judgment.

## M.    OTHER LIMITATIONS

The limitations set forth in the Amended Docket Control Order (Dkt. 70) of April 26,

2013, are as follows:

> 1.  All depositions to be read into evidence as part of the parties'
> case-in-chief shall be **EDITED** so as to exclude all unnecessary,
> repetitious, and irrelevant testimony; **ONLY** those portions which
> are relevant to the issues in controversy shall be read into evidence.
>
> 2.  The Court will refuse to entertain any motion to compel
> discovery filed after the date of this Order unless the movant
> advises the Court within the body of the motion that counsel for
> the parties have first conferred in a good faith attempt to
> resolve the matter. *See* Local Rule CV-7(h).

3.  The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(a) The fact that there are motions for summary judgment or motions to dismiss pending;

(b) The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(c) The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

**N.**   **CERTIFICATIONS**

The undersigned counsel for each of the parties to this action does hereby certify and acknowledge the following:

1.  Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

2.  Discovery limitations set forth in the Federal Rules of Civil Procedure, Local Rules and the Court's orders have been complied with and not altered by agreement or otherwise;

3.  Each exhibit in the list of exhibits herein:

a.   is in existence;

b.   is numbered; and

c.   has been disclosed to opposing counsel.  Counsel will exchange exhibits in the near future.

DATED: September 17, 2013

APPROVED AS TO FORM AND SUBSTANCE:

By: */s/ Lee A. Goldberg*_____
    Lee A. Goldberg  -- Lead Attorney (member of the bar, E.D. Tex.)
    Morris E. Cohen (member of the bar, E.D. Tex.)

Benjamin H. Graf (admitted *pro hac vice*)
Limor Wigder (admitted *pro hac vice*)
**GOLDBERG COHEN LLP**
1350 Avenue of the Americas, 4th Fl.
New York, New York 10019
(646) 380-2087 (phone)
(646) 514-2123 (fax)
MCohen@GoldbergCohen.com
LGoldberg@GoldbergCohen.com
BGraf@GoldbergCohen.com
LWigder@GoldbergCohen.com


John M. Jackson
Texas Bar No. 24002340
jjackson@jw.com
Matthew C. Acosta
Texas Bar No. 24062577
macosta@jw.com
**JACKSON WALKER L.L.P.**
901 Main Street, Suite 6000
Dallas, Texas  75202
Telephone:  (214) 953-6000
Facsimile: (214) 953-5822

*Attorneys for Plaintiffs*


APPROVED AS TO FORM AND SUBSTANCE:


  */s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, L.L.P.
303 S. Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
melissa@gillamsmithlaw.com

Robert C. Nissen, Esq. (*admitted pro hac vice*)
McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 496-7716
rnissen@mckennalong.com

Jeffrey D. Wexler, Esq. (*admitted pro hac vice*)
McKENNA LONG & ALDRIDGE LLP
300 S. Grand Ave., 14th Floor
Los Angeles, CA 90071
Telephone:  (213) 892-4910
jwexler@mckennalong.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all counsel who are deemed to have consented to electronic service on this the 17th day of September, 2013.  *See* Local Rule CV-5(a)(3)(A)

*/s/ Benjamin H. Graf*