# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC., | § § § | |
| *Plaintiffs, Counter-Defendants*, | § § | Civil Action No. 2:10-cv-461-JRG |
| v. | § § | |
| ROYAL KING INFANT PRODUCTS CO. LTD., | § § § | |
| *Defendant, Counter-Plaintiff*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the post-trial motions pending in this case relating to liability.

Defendant Royal King Infant Products Co., Ltd. ("RK") filed a (1) Motion for Judgment as a Matter of Law on Plaintiff's Count I for Breach of Contract and Royal King's Third Counterclaim for Breach of Contract, or, in the Alternative, for a New Trial on Damages on Plaintiff's Count I for Breach of Contract (Or, At Least, Reducing the Damage Award) and (2) a Motion for a New Trial on Damages. (Dkt. No. 240.) Plaintiffs Luv n' Care Ltd. and Admar International, Inc. (collectively, "LNC" or "Plaintiffs") oppose RK's Motions. (Dkt. No. 251.)

Also before the Court is LNC's Renewed Motion for Judgment as a Matter of Law on Defendant's Claims for Tortious Interference. (Dkt. No. 241.) RK opposes the Motion. (Dkt. No. 249.)

The Court has addressed RK's motion to amend the Court's February 14, 2014 Memorandum Opinion and Order (Dkt. No. 234) regarding RK's equitable estoppel defense and fraudulent inducement claim separately. (Dkt. No. 282.)

Having reviewed the parties' written submissions, and for the reasons stated below, the

Court finds that RK's Motions should be **DENIED** as to the issues of the jury's determinations that RK breached Paragraph 1 of the Settlement Agreement by under-reporting sales and underpaying royalties, that RK breached Paragraph 6 of the Settlement Agreement by selling versions of the Settlement Products that were likely to cause confusion with LNC's products for the period after the Settlement Agreement, and that LNC did not breach the Settlement Agreement by filing the instant lawsuit. The Court further finds that LNC's Motion should be **DENIED** as to the issue of the jury's determination of no intentional interference by RK and **GRANTED** as to the issue of the jury's determination of intentional interference by LNC.

The damages issues and alternative motions for new trial on damages raised by LNC and RK's Motions are **CARRIED**.

## I. BACKGROUND

**A.  Settlement Agreement**

On June 22, 2009, the parties executed a settlement agreement (Dkt. No. 1-1, "Settlement Agreement") to resolve a 2008 trademark case previously before this Court. (Dkt. No. 192.) Under the terms of the Settlement Agreement, RK would pay royalties on sales of certain products that RK made before the Settlement Agreement and would stop making the same:

> 1) Royal King shall pay a 12% royalty on all past sales of the products listed on the spreadsheet attached hereto as Exhibit A (hereinafter "the Products"). The total royalty for all U.S. and international sales is $396,000 USD, based on Royal King's representations as to the total US and international sales of the Products.
> . . .
>
> 6) Royal King will immediately cease and desist worldwide from making, selling, offering to sell, marketing, and/or promoting the Products, including any versions of the Products or their packaging that are likely to cause confusion with LNC's products or packaging. In the event that Royal King has any remaining Products in inventory, Royal King shall have 30 days from execution of this Settlement to sell-off any such remaining Products, shall report any sales beyond those paid for in this Agreement, and shall pay the 12% royalty on such sales. Any products,

and the Molds for such products, remaining more than 30 days from execution of this Settlement shall be destroyed, and Royal King shall provide proof of same.

(Dkt. No. 1-1 ("Settlement Agreement").) The terms of the Settlement Agreement also provided for a release of past and present claims relating to the products at issue:

> 5) LNC and Royal King agree that this is a global settlement of all past and present claims LNC had or has against Royal King with respect to the Products up through the date of the present Agreement, and that this settlement and the Products in this Agreement are not limited to the colors in the images below, or any particular colors. . . . .
> . . .
>
> 8) Subject to the provisions in this Agreement, LNC and Royal King hereby release, acquit and discharge one another . . . from and against any and all past and present claims, demands, obligations, liabilities, and causes of action worldwide, of any nature whatsoever, at law or in equity, asserted or unasserted, known or unknown arising out of or in connection with the Products. . . .

(Settlement Agreement ¶¶ 5, 8.)

On November 4, 2010, LNC brought suit against RK alleging breach of contract, fraud in the inducement, tortious interference with existing and prospective contractual or business relations, and patent infringement. (Dkt. No. 20.) In response, RK raised a number of affirmative defenses including equitable estoppel and statutes of limitation. (Dkt. No. 116.) RK also counterclaimed accusing LNC of breach of contract, tortious interference with existing and prospective contractual or business relations, and fraud in the inducement. (*Id.*)

**B. Jury Trial**

The Court began a jury trial in the present case on October 7, 2013. Three days later, the jury returned a unanimous verdict on October 10, 2013. In its verdict, the jury found that RK had violated Paragraph 1 of the Settlement Agreement by under-reporting sales and underpaying pre-Agreement royalties on the Settlement Products for the period before the Settlement Agreement; that RK had violated Paragraph 6 of the Settlement Agreement by selling versions of the

Settlement Products that were likely to cause confusion with LNC's products for the period after the Settlement Agreement; and that $10,000,000.00 was the "sum of money, if paid now" which would "adequately compensate Plaintiffs Luv N' Care and Admar as to . . . [LNC's claim of] breach of contract." (Dkt. No. 195 ("Verdict") ¶¶ 1–2, 4(A).)

The jury further found that RK did not engage in intentional interference with LNC and/or Admar's existing or prospective contractual or business relations regarding any of LNC and/or Admar's customers; and that $0.00 was the "sum of money, if paid now" which would "adequately compensate Plaintiffs Luv N' Care and Admar as to . . . [LNC's claim of] intentional interference." (Verdict ¶¶ 3, 4(B).)

The jury further found that LNC and/or Admar did not breach the Settlement Agreement by filing the instant lawsuit seeking recovery for claims that were released in the Settlement Agreement and that $0.00 was the "sum of money, if paid now" which would "adequately compensate Defendant Royal King as to . . . [RK's claim of] breach of contract." (Verdict ¶¶ 7, 9(A).)

The jury further found that LNC and/or Admar did engage in intentional interference with RK's existing or prospective contractual or business relations regarding any of RK's customers but that $0.00 was the "sum of money, if paid now" which would "adequately compensate Defendant Royal King as to . . . [RK's claim of] intentional interference." (Verdict ¶¶ 8, 9(B).)

After trial, RK filed a motion for judgment as a matter of law under Rule 50(b) on liability on the contract claims (Dkt. No. 240). LNC filed a motion for judgment as a matter of law under Rule 50(b) on liability on the intentional interference claims. (Dkt. No. 241.)

RK and LNC assert that, in the nearly seventeen hours of testimony presented at trial, the

jury did not have sufficient evidence for its findings of liability and damages on the contract and tortious interference claims.

### C. Bench Trial

On December 4, 2013, the Court held a bench trial to hear additional evidence presented solely on RK's fraud in the inducement claim. (*See* Dkt. No. 213.) The Court also heard arguments relating to RK's equitable estoppel defense. (*See* Dkt. No. 213 at 3–4; Dkt. No. 198 at 1.) On February 14, 2014, this Court entered its Findings of Fact and Conclusions of Law relating to RK's fraud in the inducement claim and equitable estoppel defense. (Dkt. No. 234.) This Court found that RK had not demonstrated by a preponderance of the evidence that LNC had fraudulently induced RK to enter into the Settlement Agreement, or that LNC's breach of contract claim should be barred by the doctrine of equitable estoppel. (*Id.*) Accordingly, judgment was entered in favor of LNC on RK's claim for fraudulent inducement and equitable estoppel defense. (*Id.*)

RK moved the Court to amend, under Rule 52(b), the Court's findings in the February 14, 2014 Memorandum Opinion and Order (Dkt. No. 234 ("Memorandum Opinion")) denying RK's claim for fraud in the inducement and RK's defense of equitable estoppel. (Dkt. No. 240.) RK asserted that the Court should find additional facts which would support a finding that RK had proven by a preponderance of the evidence its claim for fraud in the inducement and its defense of equitable estoppel. (*See* Dkt. No. 240.) The Court denied RK's motion. (Dkt. No. 282.)

## II. APPLICABLE LAW

### A. Judgment as a Matter of Law Under Rule 50(b)

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court asks whether "the state of proof is such that reasonable and impartial minds could

reach the conclusion the jury expressed in its verdict." Fed. R. Civ. P. 50(b); *Am. Home Assur. Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004). Judgment as a matter of law is appropriate only if "the facts and reasonable inferences point so strongly and overwhelmingly in favor of one party that reasonable minds could not arrive at a different verdict." *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 520 (5th Cir. 2013) (internal quotations omitted); *see also Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004).

Under Fifth Circuit law, a court is to be "especially deferential" to a jury's verdict, and must not reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden*, 693 F.3d at 498 (citation and internal quotations omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he

court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

### III. ANALYSIS

**A. Whether "the Products" as Defined in the Settlement Agreement Includes the "Replacement Products"**

RK asserts that the main issue in the case is whether the Settlement Agreement barred the sale of the Replacement Products. (Dkt. No. 240 at 5.) The question hinges on whether or not the Replacement Products were included in the definition of "the Products" as used in the Settlement Agreement. If the Replacement Products were included in the definition of "the Products," then the Settlement Agreement would have provided for the release of all claims by LNC against RK on the sales of those Replacement Products. However, if the Replacement Products were *not* included in the definition of "the Products," then the Settlement Agreement did not provide for the release of such claims.

Paragraph 1 of the Settlement Agreement defines the term "the Products" as those fifteen products identified in Exhibit A to the Settlement Agreement. (Dkt. No. 240-8, PTX 29, ¶ 1, Exh. A.) The Settlement Agreement further states that RK may not sell "the Products, *including any versions of the Products* or their packaging that are likely to cause confusion with LNC's products or packaging." (*Id.* ¶ 6 (emphasis added).)

RK argues that LNC knew, at the time the parties signed the Settlement Agreement, that RK was selling the Replacement Products and therefore the Parties' definition of the term "the Products" necessarily included the Replacement Products. (Dkt. No. 240 at 6; Dkt. No. 240-9, PTX 569.)

LNC argues that email exchanges during the settlement negotiations made LNC's

position clear that any relevant products had to be brought to LNC's attention and had to be discussed and expressly agreed upon. (Dkt. No. 251 at 2.) Specifically, the jury considered a June 15, 2009 email from LNC's attorney to RK's attorney during settlement negotiations:

> If [RK] wants a release for any other products, patent applications, or patents, Luv n' care needs to see them so that they can be expressly discussed, and we would then need to specifically list them if the parties can reach an agreement on them.

(Dkt. No. 215-3, PTX 794 at 39; 10/7/2013 P.M. Trial Tr. (Hakim), Dkt. No. 200, at 79:4–84:15, 88:14–93:6, 96:18–97:18) LNC further argues that RK never discussed or mentioned the Replacement Products during settlement in the extensive email correspondence regarding settlement, nor did RK's attorneys take the stand in either the bench or jury trial to testify that the Replacement Products were discussed with LNC during settlement negotiations. (Dkt. No. 251 at 2; Dkt. No. 215-3, PTX 794.)

The jury was presented with the Settlement Agreement, which explicitly defined "the Products" as the fifteen products included as Exhibit A to the Settlement Agreement. (Dkt. No. 240-8, PTX 29, ¶ 1, Exh. A.) The jury was also presented with the email exchanges during settlement negotiations in which the parties never contemplated that the Replacement Products were to be included in the definition of "the Products." (Dkt. No. 215-3, PTX 794 at 39.) Having heard and seen all the evidence, the jury agreed with LNC over RK. The Court agrees that RK has not met its post-trial burden to establish that the evidence points so strongly and overwhelmingly in RK's favor that no reasonable jury could have reached the conclusions reached in this case. This Court will not substitute its judgment for that of the jury. This Court does not find that no reasonable jury could have found that the "the Products," as defined in the Settlement Agreement, did not include the Replacement Products.

Further, the Jury's finding does not conflict with the Court's findings of fact on the same

issue. (Dkt. No. 234 at ¶¶ 18-28.)

B.  **Whether the Replacement Products Are Versions or Iterations of "the Products" as Contemplated in the Settlement Agreement**

RK asserts that no reasonable jury could have found that the Replacement Products are versions or iterations of "the Products," which the Settlement Agreement prohibits RK from selling. (Dkt. No. 240 at 7–10.) LNC counters that the jury reasonably found that the Replacement Products were prohibited versions of "the Products" that the Settlement Agreement prohibited RK from selling. (Dkt. No. 251 at 11–15.)

As discussed above, RK was prohibited from selling at least the fifteen products enumerated in Exhibit A to the Settlement Agreement. (Dkt. No. 240-8, PTX 29, ¶ 1, Exh. A.) In addition, RK was prohibited from making products that were versions of "the Products":

> 6) Royal King will immediately cease and desist worldwide from making, selling, offering to sell, marketing, and/or promoting the Products, including any versions of the Products or their packaging that are likely to cause confusion with LNC's products or packaging. . . .

(Settlement Agreement ¶ 6.)

LNC argues that Paragraph 6 does not redefine "Products" for purposes of the Settlement Agreement, but rather unambiguously sets forth what products RK may not sell in the future: (1) the Products shown in Exhibit A ***and*** (2) any version of the Products or their packaging that are likely to cause confusion with LNC's products or packaging. (Dkt. No. 251 at 12, Settlement Agreement ¶ 6.) As support, LNC points to Mr. Hakim's testimony corroborating this interpretation of the contract.

> MR. GOLDBERG: If we could switch to No. 6, Paragraph 6.
>
> Q. (By Mr. Goldberg) And if you'd focus on the first sentence, Mr. Hakim, and tell me what your understanding is of what the parties agreed to there.
>
> A. This just says that Royal King will immediately cease and desist

> worldwide from making, selling, offering to sell, marketing, and/or promoting the products, capital P, including any versions of the products, which is depicted in Exhibit A, or their packaging that are likely to cause confusion with Luv N' Care's, small p, products or packaging.
>
> Q. What was your understanding of the term ["]including any versions of the products["]?
>
> A. Well, he can't make another knockoff or a similar version. He can't -- he can't make a colorable limitation [sic]. It's -- it clearly says just including any version of the product. He can't take the cup and change a line on it and sell it and it's a different product.
>
> Q. And what is your understanding of the phrase ["]that are likely to cause confusion with Luv N' Care's products["]?
>
> A. He can't make and change his item, which would still be similar to our product -- our products.

(10/7/2013 P.M. Trial Tr. (Hakim), Dkt. No. 200, at 100:19–101:18); *see* Dkt. No. 251 at 12.)

RK argues that, in construing the contract as a whole, and in particular Paragraphs 1, 6, and 8, it is clear that the Parties' intent was that the Replacement Products were not "versions of the Products." (Dkt. No. 240 at 9–10.) As support, RK points to Mr. Hakim's testimony regarding the definition of "the Products" in the release paragraph, Paragraph 8 of the Settlement Agreement:

> A. The products are the products in Exhibit A that's attached to this settlement agreement.
>
> Q. All right. And if the product is slightly different from what's in Exhibit A, would that be covered here?
>
> A. You mean various products? Are you asking me are there various --
>
> Q. Like -- well, there's -- there's a sippy cup in Exhibit A. The exact sippy cup in Exhibit A is covered by this term. Would a sippy cup that was a little different from the sippy cup in Exhibit A be covered by this term, or is it only the exact products in Exhibit A?
>
> A. Only this exact product. If I may elaborate for the jury, this does not cover various products, because if it were to cover various products as in Paragraph 6, we would have inserted various products. And known or unknown is not talking about products. It's talking about other rights that

> Luv N' Care gave up.
>
> Q. All right. So to clarify, your belief of the term, the products, covers the exact products shown in Paragraph -- Paragraph -- Exhibit A to the settlement agreement and no others?
>
> A. Not only my belief, but since I drafted this with Mr. Khurana, we know exactly what it means.

(10/8/2013 A.M. Trial Tr. (Hakim), Dkt. No. 201, at 11:23–12:23); *see* Dkt. No. 240 at 10.) However, this testimony regarding Paragraph 8 does not preclude the jury's interpretation of Paragraph 6 to include more than the Products shown in Exhibit A.

The jury considered the testimony of Mr. Hakim on direct and cross, as well as the four corners of the Settlement Agreement, including the specific language of Paragraphs 1, 6, and 8. The jury was free to weigh the testimony of Mr. Hakim and the arguments of RK. The jury agreed with LNC over RK in finding that Paragraph 6 of the Settlement Agreement forbade RK from making (1) the products described in Exhibit A *and* (2) products that were likely to cause confusion with LNC's products or packaging. The Court agrees that RK has not met its post-trial burden to establish that the evidence points so strongly and overwhelmingly in RK's favor that reasonable jurors could not reach a contrary conclusion. The jury's verdict is supported by substantial evidence. This Court does not find that no reasonable jury could have found that the Replacement Products were versions or iterations of the Products that RK was prohibited from selling.

**C.    LNC's Claims**

**1) Breach of Contract: Pre-Agreement Royalties**

RK first attacks the jury's finding that RK violated Paragraph 1 of the Settlement Agreement by under-reporting sales and underpaying royalties for the Settlement Products for the period before the Settlement Agreement. (Dkt. No. 240 at 10–13; Verdict ¶ 1.) To prevail on

judgment as a matter of law, RK must show that no reasonable jury would have a legally sufficient evidentiary basis to find for LNC. Fed. R. Civ. P. 50. RK argues that the parties, at the time they signed the Settlement Agreement, could not have intended to bar sales of the Replacement Products (products that RK began selling after it was sued in the prior litigation that replaced the products on which RK originally had been sued) because the Replacement Products were being sold before the signing date of the Settlement Agreement, and therefore LNC waived any claims to those products by the release in paragraph 8. (Dkt. No. 240 at 5–6.)

LNC argues that Paragraphs 5 and 8 ("Release Paragraphs") did not release the replacement products. Specifically, LNC argues that the Products identified in the Release Paragraphs did not extend beyond the definition of "Products" in Paragraph 1. The term "Products" also appears in Paragraph 6, under which RK must cease and desist from selling "the Products." However, LNC further argues that Paragraph 6 does not re-define "Products" for the purposes of the Settlement Agreement, but rather sets forth the products that RK may not sell in the future.

RK contends that LNC's damages expert, Mr. Payne, testified that RK had sold $12 million worth of Replacement Products prior to signing the Settlement Agreement. (*See* 10/9/2013 P.M. Trial Tr. (Payne), Dkt. No. 204, at 149:21–150:2; Dkt. No. 240 at 6.) LNC contends that RK misconstrues Mr. Payne's testimony and that instead, Mr. Payne had made it clear that, due to RK's recordkeeping and conduct, he had no way of actually knowing how many of RK's pre-Agreement sales were for the Accused (not Replacement) Products rather than the Settlement Products. (*See* Dkt. No. 251 at 13 (*citing* 10/9/2013 P.M. Trial Tr. (Payne), Dkt. No. 204, at 142:8–143:12, 147:9–21, 149:5–150:6).). For instance, Mr. Payne testified as follows:

> Q. Based upon the invoices that you've seen, is it your understanding that stores in the United States would have had more accused products from Royal King on their shelves than settlement products during the period from 2007 through June 2009?
>
> A. I -- I tried to answer that, that I think there is difficulty in fully segregating those, because the product numbers, the RK product item numbers for the settlement and accused products had not been tracked, other than by photographs or by, in some cases, customer numbers, but not the product numbers that are used on the invoices.
>
> . . . .
>
> Q. (By Mr. Wexler) Okay. And so here we have a document that shows $12 million in accused products and $3.8 million in settlement products; is that correct?
>
> A. With the provision that I just explained that that division is not necessarily very accurate for this period of time because of lack of disclosure on the product numbers from the invoices. I think it's accurate in total, based on the invoices. It's the division that I disclosed had some issues regarding its delineation between those two groups.

(10/9/2013 P.M. Trial Tr. (Payne), Dkt. No. 204, at 9:5–150:6.) Mr. Payne's testimony is sufficient to support the jury's finding that RK violated Paragraph 1 of the Settlement Agreement by under-reporting sales and underpaying royalties for pre-Agreement sales of Settlement Products. (Verdict ¶ 1.)

Furthermore, as discussed above, the jury properly and reasonably found that (1) "the Products," as defined in the Settlement Agreement, did not include the Replacement Products and that (2) the Replacement Products were versions or iterations of the Products that RK was prohibited from selling. (*See supra* Sections III.A, III.B.)

The jury was properly instructed on the law, was free to judge the credibility of the witnesses, and weigh all competing evidence. After consideration of all the presented evidence, the jury found that RK violated Paragraph 1 of the Settlement Agreement by under-reporting sales and underpaying royalties for pre-Agreement sales of Settlement Products. The Court will

not substitute its judgment for that of the jury under the preponderance of the evidence standard on the disputed issues of fact underlying the breach of contract decision. The Court does not find that no reasonable jury could have found that the term "Products" in the Settlement Agreement does not include the Replacement Products. The Court further does not find that no reasonable jury could have found that RK violated Paragraph 1 of the Settlement Agreement by under-reporting sales and underpaying royalties for pre-Agreement sales. Accordingly, RK's motion for judgment as a matter of law on this issue is hereby denied. (Dkt. No. 240.)

### 2) Breach of Contract: Post-Agreement Sales

RK attacks the jury's finding that RK violated Paragraph 6 of the Settlement Agreement by selling, post-Agreement, versions of the Settlement Products that were likely to cause confusion with LNC's products. (Dkt. No. 240 at 10–14; Verdict ¶ 2.) As before, to prevail on judgment as a matter of law, RK must show that no reasonable jury would have a legally sufficient evidentiary basis to find for LNC. Fed. R. Civ. P. 50. RK argues that the parties, at the time they signed the Settlement Agreement, could not have intended to bar sales of the Replacement Products because the Replacement Products were being sold before the signing date of the Settlement Agreement and therefore LNC waived any claims to those products by the release in paragraph 8. (Dkt. No. 240 at 5–6.)

However, as discussed above, the jury properly and reasonably found that (1). "the Products," as defined in the Settlement Agreement, did not include the Replacement Products and (2) the Replacement Products were versions or iterations of the Products that RK was prohibited from selling. (*See supra* Sections III.A, III.B.)

The jury was free to weigh all the competing testimony of Mr. Hakim and the arguments of RK. (*See supra* Section III.B.) At the trial's conclusion, the jury agreed with LNC over RK in

finding that Paragraph 6 of the Settlement Agreement forbade RK from making the products described in Exhibit A *in addition to* products that were likely to cause confusion with LNC's products or packaging. The parties do not dispute that RK did in fact sell the Replacement Products. The Court agrees that RK has not met its post-trial burden to establish that the evidence points so strongly and overwhelmingly in RK's favor that reasonable jurors could not reach a contrary conclusion. This Court will not substitute its judgment for that of the jury, and does not find that no reasonable jury could have found that RK violated Paragraph 6 of the Settlement Agreement by selling versions of the Settlement Products that were likely to cause confusion with LNC's products after the Settlement Agreement was signed. Accordingly, RK's motion for judgment as a matter of law on this issue should be and is hereby denied. (Dkt. No. 240.)

**D.     RK's Claims and Defenses**

   **1)  Breach of Contract: Bringing this Suit**

RK attacks the jury's finding that LNC did not breach the Settlement Agreement by filing this lawsuit and seeking recovery for claims that were allegedly released in the Settlement Agreement. (Dkt. No. 240 at 10–14; Verdict ¶ 7.) As before, to prevail in seeking judgment as a matter of law, RK must show that no reasonable jury would have a legally sufficient evidentiary basis to find for LNC. Fed. R. Civ. P. 50.

Paragraph 8 of the Settlement Agreement provides for a release of "all past and present claims . . . arising out of or in connection with the Products . . . ." (Settlement Agreement ¶ 8 (emphasis added).) RK argues that LNC's claims regarding the Replacement Products were released by Paragraph 8 because LNC's claim for damages for the Replacement Products "aris[es] out of or [is] in connection with the Products" if they are "versions of the Products" under Paragraph 6. (Dkt. No. 240 at 12.) RK argues that LNC therefore breached the release of

Paragraph 8 by bringing its claim for damages on the Replacement Products. (*Id.*)

In response to RK's argument, LNC argues that the release of Paragraph 8 applies only to the Settlement Products as listed in Exhibit A and does not apply to the Replacement Products. As discussed above, LNC argues that the language of Paragraph 6 merely sets forth which products RK may not sell in the future: the Products (*i.e.*, the Settlement Products shown in Exhibit A) in addition to any versions of the Products or their packaging that are likely to cause confusion with LNC's products or packaging. (*See supra* Section III.B.) LNC argues that Paragraph 6 does not re-define "Products" for the purposes of the entire Settlement Agreement, and Mr. Hakim corroborated this unambiguous meaning of the contract during trial. (10/7/2013 P.M. Trial Tr. (Hakim), Dkt. No. 200, at 100:19–101:18); *see also supra* Section III.B.

Furthermore, as discussed previously, the jury properly and reasonably found that (1) "the Products," as defined in the Settlement Agreement, did not include the Replacement Products and that (2) the Replacement Products were versions or iterations of the Products that RK was prohibited from selling. (*See supra* Sections III.A, III.B.) Indeed, adoption of RK's interpretation of the Settlement Agreement would render Paragraph 6 insolubly confusing: exporting the "versions" language to the definition of "Products" in Paragraphs 5 and 8 would allow RK to sell products (under Paragraphs 5 and 8) it expressly agreed to stop selling (under Paragraph 6). *See EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 651 (5th Cir. 1999) (Texas law requires the court to interpret the contract "so as to give effect to each and every provision of the contract.").

The jury was properly instructed on the law, was free to judge the credibility of the witnesses, and weigh all competing evidence. After consideration of all the evidence presented, the jury found that LNC did not breach the Settlement Agreement by bringing this suit. The

Court will not substitute its judgment for that of the jury. Accordingly, RK's motion for judgment as a matter of law on this issue is hereby denied. (Dkt. No. 240.)

### 2) Intentional Interference

LNC attacks the jury's finding that LNC did engage in intentional interference with RK's contractual or business relations. (Dkt. No. 241; Verdict ¶ 8.) The jury was instructed on the elements of intentional interference. (10/10/2013 A.M. Trial Tr. (Final Jury Instructions), Dkt. No. 205, at 98:14–100:10.) The verdict form, approved by both parties, asked the jury:

> Has Royal King proven by a preponderance of the evidence that Luv N' Care and/or Admar engaged in intentional interference with Royal King's existing or prospective contractual or business relations regarding any of Royal King's customers?

(Verdict ¶ 3.) The jury answered "Yes." (*Id.*) To prevail on judgment as a matter of law, LNC must show that no reasonable jury would have a legally sufficient evidentiary basis to find for RK. Fed. R. Civ. P. 50. LNC argues that (1) RK presented no evidence that RK had a contract or prospective contract with any of RK's customers with whom LNC allegedly interfered; (2) the only evidence of alleged interference by LNC were valid cease and desist letters and lawsuits, which are not independently wrongful or unlawful; (3) there is no evidence of causation; (4) there is no evidence of actual harm; and (5) any allegedly tortious acts committed by LNC were justified. (Dkt. No. 241 at 3–5.)

#### a. Actual Harm

Evidence of actual harm is required to support a verdict of intentional interference. LNC argues that there is no such evidence here and that the jury's finding cannot stand. (Dkt. No. 241 at 3–5.) LNC points to the fact that, even though the jury found that RK had prevailed on its claim for tortious interference, the jury awarded RK no damages. (Dkt. No. 256 at 1.) LNC argues that there is also no evidence in the record to support quantification of RK's damages. *Id.*

Furthermore, LNC cites Fifth Circuit jurisprudence holding that, in order for a party to succeed on a tortious interference claim, RK would have to show that actual damage or loss had occurred. *Id.* (citing *Hill v. Institutional Sec. Corp.*, 420 Fed. Appx. 427, 431–32 (5th Cir. 2011). LNC argues that, under Texas law, neither the fact nor amount of damages alleged can be speculative; both must be established with "reasonable certainty"; a plaintiff's failure to show *either* acts as a bar to recovery. *Id.* (citing *Roehrs v. Conesys, Inc.*, 332 Fed. Appx. 184, 186 (5th Cir. 2009).

In response, RK argues that there was sufficient evidence in the record for a reasonable jury to find that there was actual harm. (Dkt. No. 249 at 9.) Specifically, RK points to the testimony of LNC's damages expert, Mr. Payne, that RK's sales of the products at issue in this lawsuit declined from $4.3 million in 2008 to $2.3 million in 2012. (*Id.* (citing Oct. 9, 2013 PM Trial Tr., Dkt. No. 204 at 140:5–141:6, 166:10–21).) RK argues that this decline occurred after LNC began suing RK's customers and that this decrease in sales is evidence of actual harm resulting from LNC's actions. RK further argues that the jury's failure to quantify RK's damages does not mean that RK did not suffer harm as a result of Plaintiff's conduct. *Id.* at 9–10.

In response, LNC argues that RK itself did not proffer any witnesses to testify as to RK's damage or to quantify such damage. (Dkt. No. 24 at 10.) LNC further argues that the testimony RK points to (by Mr. Payne) was unrelated to RK's alleged damages for tortious interference. (Dkt. No. 256 at 2.)

Indeed, in trial, Mr. Payne discussed the decrease in sales between the years 2008 and 2012 in the general context of sales numbers that Mr. Payne used to calculate LNC's damages; but neither Mr. Payne nor LNC's attorney ever alluded to—much less explicitly stated—the notion that this decrease in sales was at all related in any way to LNC's purported tortious interference. (Oct. 9, 2013 PM Trial Tr., Dkt. No. 204 at 140:5–141:6, 166:10–21.) Without even

a suggestion that this decrease in sales may have been connected to tortious interference by LNC, RK simply did not present any evidence that there was actual harm as a result of LNC's purported tortious interference. Additionally, the jury's explicit award of zero damages on this claim is a compelling sign that RK did not present evidence of any actual harm.

LNC has shown that no reasonable jury would have a legally sufficient evidentiary basis to find for RK. RK never presented a witness during trial to show what damages, if any, would have resulted from its tortious interference claim. In this particular regard, the record is void. Since the jury found liability but no damages on this count, there cannot have been a supportable finding in favor of liability. Accordingly, LNC's motion for judgment as a matter of law on this issue is hereby granted. (Dkt. No. 241.)

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the jury's verdict with regard to liability should stand. The jury's verdict in this respect is supported by adequate evidence presented at trial and should not be disturbed, except as to LNC's liability for tortious interference.

Accordingly, RK's Motion for Judgment as a Matter of Law on Plaintiff's Count I for Breach of Contract and Royal King's Third Counterclaim for Breach of Contract (Dkt. No. 240) is **DENIED** as to the issues of the jury's determinations that (1) RK breached Paragraph 1 of the Settlement Agreement by under-reporting sales and underpaying royalties, (2) RK breached Paragraph 6 of the Settlement Agreement by selling versions of the Settlement Products that were likely to cause confusion with LNC's products for the period after the Settlement Agreement, and (3) LNC did not breach the Settlement Agreement by filing the instant lawsuit.

Furthermore, LNC's Renewed Motion for Judgment as a Matter of Law on Defendant's

Claims for Tortious Interference (Dkt. No. 241) is **DENIED** as to the issue of the jury's determination of no intentional interference by RK and **GRANTED** as to the issue of the jury's determination of intentional interference by LNC.

The damages issues and alternative motions for new trial on damages raised in the Parties' Motions are **CARRIED**, and will be addressed by the Court in a subsequent opinion.

**So ORDERED and SIGNED this 28th day of January, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE